## HOYT HEATER CO. OF NORTHERN CALIFORNIA, a general partnership,

v.

## AMERICAN APPLIANCE MFG. CO. et al.

### No. C–77–2165 SW.

United States District Court
N. D. California.

May 29, 1980.

Lawrence Alioto, Alioto & Alioto, San Francisco, Cal., for plaintiff.

Paul J. Sanner, Charles A. Legge, Bronson, Bronson & McKinnon, San Francisco, Cal., James N. Johnson and Sigrid E. Dynek, Milwaukee, Wis., for defendant A. O. Smith Corp.

## MEMORANDUM AND ORDER GRANTING SUMMARY JUDGMENT

SPENCER WILLIAMS, District Judge.

This antitrust action arises out of price disturbances in the Northern California water heater market which began sometime in June and July of 1977 and allegedly continued until at least the end of that year. Plaintiff, Hoyt Heater Company of Northern California ("Hoyt"), is a family-owned business engaged solely in manufacturing and selling water heaters. Ninety percent of plaintiff's sales are made in Northern California, which is designated to be the area from Bakersfield to the Oregon border. The defendants include all but one of the nation's major manufacturers of water heaters ("the majors"), certain of their officers, and others. As the result of certain defense motions, voluntary dismissals and settlements, the only remaining defendant became A. O. Smith Corporation ("Smith") and the only remaining claims became those asserted against Smith under section 2 of the Clayton Act, 15 U.S.C. § 13 (also known as the Robinson-Patman Anti-discrimination Act), and section 7 of the Clayton Act, 15 U.S.C. § 18 (also known as the Celler-Kefauver Anti-Merger Act). Smith moved for summary judgment on both the remaining claims. For the reasons set forth below, summary judgment in favor of Smith is appropriate, and this action is dismissed.

### I.

### THE SECTION 7 CLAIM

Summary judgment was granted at the time of the hearing on this motion with respect to the section 7 claim. Section 7 provides that an acquisition of one corpora-

tion by another is unlawful where "the effect of such acquisition may be substantially to lessen competition." Under this provision, Hoyt challenged Smith's acquisition of National Steel Construction Company ("National"), a former manufacturer of water heaters sold in the Northern California market and at the time a failing business. The threatened injury to competition which plaintiff claimed arose from Smith's acquisition of National consisted of a price war, sparked by competition among the majors for National Steel's old accounts, which allegedly held the potential for putting plaintiff out of business. Plaintiff contends its presence in the Northern California market is the only barrier preventing the majors from instituting the same oligopoly pricing practices plaintiff claims they have been able to employ throughout the rest of the country. Therefore, argued plaintiff, if the merger of Smith and National resulted in a price war which drove plaintiff out of business, competition would be "substantially" lessened because an oligopolistic pricing regime would be its ultimate product.

■ The court rejected Hoyt's argument that this scenario might present a violation of section 7 because the potential injury to competition alleged here is not the type of injury with which section 7 is concerned. Section 7 addresses acquisitions in which one company becomes too big, or by virtue of the merger the industry becomes too concentrated, for competition to continue to function properly. *See United States v. Von's Grocery Co.*, 384 U.S. 270, 275–77, 86 S.Ct. 1478, 1480–1482, 16 L.Ed.2d 555 (1966). Although under section 7 merging corporations do have an obligation to predict in advance the merger's likely impact on future competitive conditions, to find a violation in the present case would be to require Smith to have predicted in advance not only that its acquisition of National would result in some sort of competition for the former National accounts, but that this competition would take the form of a ruinous price war which could drive Hoyt out of

business and foster undue concentration of the Northern California water heater sales industry. Prediction of secondary effects so far removed from the merger itself is beyond the scope of section 7, and a claim under that section cannot be predicated upon the potential injury alleged here.[1]

## II.

### THE SECTION 2 CLAIM

With respect to the Robinson-Patman Act claim, however, the court expressed its interest in reviewing additional materials concerning the question of below cost pricing, and therefore the court granted the request made by plaintiff at oral argument for permission to conduct additional discovery. That discovery was completed and the court has now concluded its review of the supplemental materials submitted on this question. The court has determined that there are no triable issues of material fact and Smith is entitled to judgment as a matter of law.

Section 2 provides that price discrimination is unlawful "where the effect of such discrimination may be substantially to lessen competition." Hoyt alleges Smith violated this section when it cut prices to non-National accounts which were not being solicited by Smith's competitors. The prices Smith charged allegedly fell below its marginal costs of production and were discriminatory because Smith was charging substantially more everywhere else in the country. Hoyt claims to have lost specific orders as a result of its customers switching over to Smith and the other majors who followed Smith in reducing prices, as well as revenue because Hoyt itself had to charge less on its own sales.

■ Three elements must be established in order to make out a prima facie case of an actionable violation of the Robinson-Patman Act: (1) plaintiff must prove the alleged price discrimination meets the "in commerce" requirement—*i. e.*, that "either or any" of the purchases involved are in

---

1. It is worth emphasizing that plaintiff did not contend the acquisition of National *in and of* *itself* concentrated the industry enough to give rise to a section 7 claim.

commerce; (2) plaintiff must prove there has been discrimination in price between different purchasers of products of like grade and quality; and (3) plaintiff must prove the effect of the discrimination "may be substantially to lessen competition or tend to create a monopoly." *William Inglis & Sons Baking Co. v. ITT Continental Baking Company, Inc.*, 461 F.Supp. 410, 420 (N.D.Cal.1978).

There is no dispute about the first element: many of these heaters come to California by way of interstate commerce, and even portions of the Hoyt Heaters—both components and entire heaters—come from out of state.

Likewise, there are no genuine issues of material fact on the price discrimination issue. It is undisputed that Smith charged more in other parts of the country for the same heaters it was selling in Northern California. Price discrimination within the meaning of this statute is merely price difference. *Continental Baking Co. v. Old Homestead Bread Co.*, 476 F.2d 97, 103 (10th Cir. 1973), *cert. denied*, 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 218 (1973).

■ Nevertheless, price discrimination is not illegal per se, which brings the analysis to the third element. To be actionable, a substantial effect on competition must be proven: "In effect, Congress has determined that price differentiation poses a threat to competition sufficient to justify legal intervention only where such an effect can be shown." *Janich Bros., Inc. v. American Distilling Co.*, 570 F.2d 848, 855 (9th Cir. 1977), *cert. denied*, 439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978).

■ Even if the three basic elements of the plaintiff's prima facie case are established, defenses are available if the defendant can prove the price differences are due to cost differences, good faith responses to competitors' prices, or market conditions as that concept is defined under section 2(a). Smith asserts no cost justifications. It vigorously does assert a meeting competition defense, and it talks all around a market condition defense and may be presumed

to be making a defense along those lines as well. In addition, Smith argues (1) Hoyt has no right to recover against Smith because they are not competitors, as Smith sells to dealers and Hoyt sells to plumbers directly; (2) Hoyt cannot prove the fact of damage, since 1977 was its best year to that date in terms of both sales and profits; and (3) Hoyt's theory of damages is not cognizable.

### A. Injury to Competition

Smith does not explicitly base its motion for summary judgment on the contention that Hoyt could not show a substantial adverse effect on competition. However, the undisputed facts developed by the parties and subjected to their legal analyses demonstrate that no such effect can be established.

■ There is no set method for proving injury to competition in a primary line case, but the likelihood of injury may be inferred from a showing of predatory intent. Predatory intent may itself be established by a showing of predatory pricing. In the price discrimination context, predatory pricing is below cost pricing, according to which a competitor gives up short run profits usually in the hopes of achieving a market position in which it could charge supranormal prices and make up the short run losses. When a company is price discriminating, the danger is that its higher prices elsewhere—especially if those are monopoly or oligopoly prices—will be used to subsidize the below cost pricing. "Cost" for these purposes means marginal cost, but average variable cost is sometimes an acceptable evidentiary substitute. *Janich Bros.*, 570 F.2d at 853.

Smith states in its moving papers that the issue of below cost pricing is "irrelevant" to the grounds of its motion. Smith Opening Brief at 16, lines 25–28. Yet, Smith included extensive discussions of the evidence on pricing, including arguments that prices charged were not below cost. In its opposition papers, Hoyt has emphasized its contentions that Smith's prices were below cost during the relevant time period,

and specifically characterized Smith's alleged violation of the Robinson-Patman Act as occurring "when it lowered its price to its Smith distributors ..., *crossing the shutdown point of marginal variable costs.*" Hoyt Opposition Brief at 15, line 30 to 16, line 2 (emphasis added). See also *Id.* at 12, lines 9–12. Indeed, Hoyt apparently has accepted a theory of damages according to which a plaintiff in its position may recover damages represented by profit reductions only if those reductions were "made in response to below cost pricing." *Id.* at 16, lines 12–13. With respect to plaintiff's theory of damages, therefore, the issue of below cost pricing was directly implicated by Smith's summary judgment motion. In any event, the alleged below cost pricing was discussed at oral argument and was the subject of the post-hearing discovery and the supplemental papers filed by each party. Thus, whether or not Smith originally intended Hoyt's below cost pricing allegations to become a major issue in its summary judgment motion, they have been the primary focus since at least the time of the oral argument and the matter has now been thoroughly treated by both sides. It is apparent that Hoyt cannot successfully demonstrate the existence of any genuinely disputed material fact bearing on Smith's contention that its sales were made above marginal cost.

The alleged period of damage has been defined by plaintiff as extending from July 18, 1977 to December 31, 1977. July 18, 1977 was the date Smith lowered its prices across the board. Although plaintiff's allegations are not limited to pricing of the 40-gallon model, this heater is the one upon which plaintiff has sought to make out its case of below cost pricing, and it is the only one for which a significant amount of evidence has been introduced. During the relevant months in 1977, Smith was manufacturing this model at two plants, its plant in Kankakee, Illinois, and the plant in Newark, California, which it had acquired from National. On July 18, 1977, Smith lowered its price for the 40-gallon heater to $60.33, which with discounts and drawbacks came to $56.17 to volume customers. There are two main questions relevant to the 40-gallon heater pricing issue: (1) what was Smith's marginal cost at each of its two plants, and (2) what proportion of the heaters it sold in Northern California were manufactured at each plant.

■ According to affidavits filed by Smith's own people, the cost for heaters from Kankakee, with freight, came to $60.55, which is obviously over the sales price. Plaintiff, however, argues this figure is artifically low, because it is based on statistics prepared at the start of 1977, *i. e.,* on projections, and not on actual cost figures. Therefore, Hoyt contends the sales price was probably exceeded by even more than Smith admits. Quite clearly, plaintiff's argument is mere speculation. The purpose of discovery is to find out the actual facts and figures bearing an important relationship to presentation of one's case. The time allotted to discover actual cost figures in this case has been more than ample. The court therefore accepts the unrebutted figure of $60.55. Moreover, as Smith points out, it is the projections which are legally relevant, since those projections would have formed the basis for Smith's business decisions at the time. Hindsight might be more accurate, but it is not relevant when attempting to infer predatory intent from alleged below cost pricing.

At Smith's other plant, the Newark facility, the marginal cost was less because freight costs were less. Based on projections prepared by National before the acquisition, Smith's people have testified in deposition that the marginal cost was $55.30, which is well below the sales price. Plaintiff attacks this figure, claiming it is based on out-of-date material and labor statistics, and may have been prepared as early as the end of 1976. Based on evidence given by one of its own officers, Hoyt argues the Newark figures must be adjusted upward to at least $56.55, which is above the sales price. Again, however, plaintiff has introduced no actual evidence of what the Newark costs were. All the court has are plaintiff's speculations based on alleged knowledge of industry-wide costs. There is

no indication Smith actually paid those costs, nor is there any indication Smith could have been aware of its marginal cost at Newark except by using the projections prepared by National. Once again, those projections are the legally relevant figures. Also once again, Smith's unrebutted marginal cost figure, $55.30, stands, as plaintiff offers nothing substantial in opposition.

■ Hoyt has argued that a prima facie violation of the Robinson-Patman Act is virtually admitted when Smith concedes its Kankakee costs exceeded the lowest sales price. The court, however, agrees with Smith that below cost pricing may only be shown here with reference to a weighted average of the Kankakee and Newark costs. This is not to say the use of a weighted average would necessarily be appropriate in every situation of alleged predatory pricing in which two or more sources with different costs are involved. But the facts and circumstances of this case, including unrefuted affidavit testimony concerning the intended phase-out of the Kankakee operations as a source of supply for the Northern California market and the demands entailed in taking over National and attempting to meet the requirements of its former customers, make such an approach imminently justifiable here.

In order to decide whether the sales price was below the weighted average of Smith's marginal cost of production, it only remains to determine what percentage of the heaters sold by Smith during the relevant months was manufactured at each of its two plants. During this time period, Smith sold both Smith brand and National brand heaters in Northern California. Hoyt argues it is proper to consider the two brands separately. Since the Kankakee plant manufactured no National brand heaters, it is obvious the marginal cost for Smith brand heaters was the higher of the two. Plaintiff contended in its Opposition Brief that up to 25% of the Smith label heaters came from Kankakee, and therefore, applying a weighted average, the average cost of heaters exceeded the sales price. The only affirmative evidence plaintiff submitted in support of the 25% figure, however, came in the form of a guess offered by a Smith sales representative during the course of his deposition. Even that guess, though, was not adequately qualified in terms of the time period it referred to or the type of heaters involved. It is possible the representative was referring to Smith's entire line of heaters, not just the 40-gallon model, and his estimate may have been meant to apply to some period other than the period of damages defined by plaintiff. In its supplemental papers, plaintiff has attempted to derive from Smith's own statistics the number of Kankakee-manufactured Smith brand heaters sold in Northern California during the months June, July and August, 1977, and from this figure has computed that the Kankakee plant manufactured 41% of the Smith brand heaters sold during those months. Aside from the fact that this three month period only partially overlaps the July 18–December 31 period of damage, plaintiff's calculations are of no help in evaluating the pricing of the 40-gallon model they purport to analyze because the underlying Smith data pertained to sales of *all* models, not just the 40-gallon heater.

Smith objects to Hoyt's theory that the Smith and National brands can be considered separately. Nevertheless, and in contrast to Hoyt, Smith has still introduced positive, unrebutted evidence that the proportion of 40-gallon Smith brand heaters from Kankakee was well below that necessary to bring the weighted average marginal cost of Smith brand heaters under the $56.17 sales price. Additionally, Smith has demonstrated the fallacy of calculations performed by plaintiff supposedly showing that the weighted average of both brands combined exceeded the sales price through July, August and September 1977. In fact, plaintiff's calculations contain a number of other inaccuracies, but these have been exposed sufficiently in Smith's Supplementary Brief and need not be explored further here. One of the principal reasons for permitting plaintiff to conduct further discovery was to afford it the opportunity to gather evidence on the respective numbers

of heaters sold in Kankakee and in Newark. That plaintiff has utterly failed to introduce any affirmative evidence of its own supporting percentages resulting in a weighted average in excess of the sales price may be taken as an indication that such evidence simply does not exist.

It is worth noting that this case was to have been tried beginning March 12, 1979, and discovery had been closed as of February 1, 1979 pursuant to an order filed June 13, 1978. The March 12, 1979 trial date was continued to May 15, 1979 in order to accommodate Smith's summary judgment motion, and in April 1979 plaintiff opposed a motion by Smith for a further continuance of the trial. Plaintiff apparently considered itself ready for trial. With the additional discovery permitted following oral argument on Smith's motion, plaintiff has had every opportunity to learn facts favorable to its position. It can only be assumed that plaintiff has made its strongest evidence available to this court for the purpose of opposing Smith's motion for summary judgment. That evidence fails to establish the existence of any jury questions on the pricing issues. Smith's evidence that its sales were not below cost remains undisputed in any meaningful way.

The significance of this finding is that pricing cannot be used to infer predatory intent, which as noted above is one means of showing the likelihood of substantial injury to competition. This court has stated in the past that predatory intent absent a showing of actual sales below cost cannot support a finding of substantial effect. See *Inglis*, 461 F.Supp. at 422 & n. 11. Yet, even if this were not so, Hoyt does not allege evidence of actual intent aside from below cost sales. Rather, Hoyt contends Smith's alleged below cost pricing was the product of competition and antagonism between the majors: "It was done for the purpose of punishing American." Hoyt Opposition Brief at 8, lines 5–6. Hoyt has submitted no evidence that Smith specifically intended to cut prices below cost, and

in fact even alleges "Smith did not check its costs before making the July 18 move." *Id.* at lines 6–7. Although plaintiff alleges Smith was "indifferent" to the possibility such pricing would "probably drive Hoyt to the wall," *id.* at lines 2–4, plaintiff does not appear to be arguing that Smith intended its price cutting to drive Hoyt out of business, and it has presented no evidence in support of any such argument. In sum, Hoyt's allegations and proof of predatory intent are clearly insufficient to support a finding of a substantial effect on competition in the absence of below cost pricing.

Furthermore, even if it be assumed that above cost discriminatory pricing which tended to eliminate Hoyt from the market could constitute a violation of the Robinson-Patman Act, the record makes clear no such violation may be made out in this case. The undisputed evidence shows that Hoyt enjoyed a better year in 1977 than in any previous year, in spite of a strike which affected its manufacturing operations. Although the price war may have caused Hoyt to lose some accounts, and may have resulted in profits being lower than they would have been had the price competition been less fierce, there is no indication Hoyt was ever in danger of going out of business.[2] In light of what actually occurred in 1977, it would be nonsensical to hold that the possibility of a substantial effect on competition in the form of Hoyt's departure from the Northern California water heater scene should have been predicted by Smith when it lowered its prices in July 1977. Therefore, it is clear the third prong of the prima facie Robinson-Patman Act case cannot be established here absent, at the least, a showing of below cost pricing.

Accordingly, a summary judgment will be entered in favor of Smith on the Robinson-Patman Act claim.

### B. *Other Contentions*

In view of the above rulings, it is not necessary to address Smith's other argu-

---

2. These facts were developed by the parties primarily in connection with Smith's conten-

tion that Hoyt could not prove the fact of damage.

ments, including its objection to the form of plaintiff's Supplementary Affidavit.[3]

§ 13, be granted and this action be dismissed as against defendant A. O. Smith Corporation.

### III.

### ORDER

IT IS HEREBY ORDERED that defendant A. O. Smith Corporation's motion for summary judgment on plaintiff's claim under section 2 of the Clayton Act, 15 U.S.C.

---

**3.** The court does wish to note, however, that failure to establish a genuine issue of material fact on the below cost pricing allegations leads to the conclusion that plaintiff's damages could not include any recovery for lost profits. As plaintiff accurately recognized, "*Murphy Tugboat* reaffirms the salutary principle that plaintiff has no vested right in a profitable level of prices . . . ." Hoyt Opposition Brief at 16, lines 9–11. Assuming without deciding that plaintiff is correct that *Murphy Tugboat Co. v. Crowley*, 454 F.Supp. 847 (N.D.Cal.1978), "would seem to allow recovery of [profit] reduction made in response to below cost pricing, and it would seem that the level of prices immediately preceding the below cost cuts would serve as an appropriate measure," Hoyt Opposition Brief at 16, lines 12–15, plaintiff's inability to show below cost sales would preclude it from this form of recovery.