**HAYDEN PUBLISHING CO., INC.,**
**Plaintiff-Appellant,**

**v.**

**COX BROADCASTING CORP. and**
**United Technical Publications,**
**Inc., Defendants-Appellees.**

**No. 556, Docket 83–7499.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 9, 1984.

Decided March 6, 1984.

John E. Haigney, Ide & Haigney, New York City (John Timbers, New York City, of counsel), for plaintiff-appellant.

James A. Treanor, III, Treanor & Harvey, New York City (Michael R. Treanor, New York City, Andrew A. Merdek, John P. Schnitker, Dow, Lohnes & Albertson, Washington, D.C., of counsel), for defendants-appellees.

Before KAUFMAN, OAKES, and CARDAMONE, Circuit Judges.

OAKES, Circuit Judge:

Hayden Publishing Co., Inc. (Hayden), appeals from an order of the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, granting summary judgment to Cox Broadcasting Corp. (Cox) and United Technical Publications, Inc. (UTP). Hayden, the plaintiff below, alleged that Cox and UTP violated sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1–2 (1976). In particular, Hayden alleged that Cox and its wholly owned subsidiary, UTP, monopolized the market for advertising in the electronics catalogue industry by means of UTP's publication, Electronic Engineers Master (EEM). Additionally, Hayden claimed that the defendants engaged in various anticompetitive acts to injure its rival publication, Gold Book. Finding that Hayden had failed to establish that the relevant market consisted only of EEM and Gold Book, Judge Costantino granted summary judgment in favor of Cox and UTP and dismissed Hayden's complaint. *Hayden Publishing Co. v. Cox Broadcasting Corp.*, 566 F.Supp. 503 (E.D.N.Y.1983). Because we find that genuine issues of material fact remain, including the question of market definition, we reverse.

## FACTS

As described by Hayden, the electronics catalogue industry consists of publications designed for, and distributed free to, electronic design engineers, purchasing agents for engineering companies, and other specialized users of electronic products. These publications contain two sections, the first a "directory section," which lists by product category companies that supply various electronic products and services, and the second a "catalogue section," which provides space for advertising. Typically, the catalogue section provides descriptions, specifications, prices, and illustrations of electronic devices, thereby enabling design engineers to determine whether these items should be incorporated into their products. Because such publications are given free to this very specialized audience, the publishers derive their income from product advertising.

In Hayden's amended complaint of October, 1979, it charged that Cox and UTP violated sections 1 and 2 of the Sherman Act [1] by monopolizing, attempting to monopolize, and conspiring to monopolize the market for "domestic advertising in electronics catalog-directories." These alleged illegal acts of the appellees included offering free advertising pages in EEM, selling advertising in multi-year packages in anticipation of Gold Book's entry into the market, pricing some of EEM's advertising below cost, and having salespeople make false statements about Gold Book's financial stability and future prospects. Cox and UTP, of course, deny these allegations.

The central issue which has emerged thus far in the litigation is the definition of the relevant market. Hayden's contention is that the market is a very limited one, consisting only of EEM and Gold Book. Cox and UTP argue, however, that many other publications compete with EEM and Gold Book for advertising data on electronic products and, in the district court, they "nominated" nine publications for inclusion in the market.[2]

## PROCEEDINGS BELOW

In March, 1980, the defendants-appellees moved for summary judgment. Based on Hayden's answers to certain interrogatories, they claimed that "[p]laintiff has conceded that should the relevant product market in fact be *any larger* than alleged [i.e., than EEM and Gold Book], defendant UTP has *not* monopolized or attempted to monopolize it—and by necessary extension, neither Cox nor UTP has unreasonably restrained trade therein" (emphasis in original).[3] Claiming that the nominated publica-

---

**1.** Section 1 provides in relevant part:
> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal ....

Section 2 provides:
> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. §§ 1–2.

**2.** The nominated publications were Micro Waves Product Data Directory, Control Equipment Master, Interference Technology Engineers Master, Electronic Buyers Guide, Electronic Industry Telephone Directory, Who's Who in Electronics, Thomas Register, I C Master, and Electronic Distributors Master Catalog.

**3.** Cox and UTP primarily based their claim of such a concession by Hayden on the following statement:
> (h) The words "catalog-directories for the electronics trade" as used in paragraph 6 of the Amended Complaint were intended to be different from the words "electronics catalog-directories" as used in paragraph 7(a) of the Amended Complaint. The purpose of paragraph 6 was to describe the interstate commerce aspect of the defendant Cox's business. It was not deemed necessary in such paragraph to describe the relevant market monopolized by the defendants. Thus, the meaning of the words "catalog-directories for the electronics trade", as used in paragraph 6, was that the subject matter of such publications was of interest to manufacturers, buyers, sellers and users of electronic equipment. (See answer to Interrogatory No. 39.) Advertising in such a broad category of publications is not the market monopolized by the defendants.

tions were competitors of EEM and Gold Book, they sought dismissal of Hayden's claims.

Hayden insisted that it had made no such concession. Moreover, it claimed that the nominated publications were not competitors of EEM and Gold Book,[4] and that even if they were found to be part of the relevant market, EEM still enjoyed monopoly power. In addition, Hayden cross-moved for partial summary judgment, asking the court to rule with respect to each of the nominated publications that it did not compete with EEM. Hayden did not ask the court to determine that EEM and Gold Book were the sole participants in the market.

In May, 1983, Judge Costantino granted the motion by defendants-appellees for summary judgment and dismissed Hayden's complaint, making no mention of the alleged concession on which the motion was based. The court found "ample evidence ... that reasonable interchangeability exists between EEM and the other publications cited by the defendants." 566 F.Supp. at 508. Although recognizing that

interchangeability "is not the sole test for determining the relevant market," *id.*, it held that that finding "enables this court to ascertain that the 'outer boundaries' of the relevant product market are not limited to EEM and Gold Book." *Id.* Invoking the criteria for submarket analysis enunciated in *Brown Shoe Co. v. United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), the court found additionally that "[a]s to whether a valid 'submarket' exists consisting solely of EEM and Gold Book, here too plaintiff is unable to substantiate its market definition." *Id.* On the basis of these findings, the court dismissed Hayden's complaint and denied Hayden's cross-motions for summary judgment. 566 F.Supp. at 505 n. 1.

## DISCUSSION

Summary judgment is available where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). As the district court recognized, however, "'summary [judgment] procedures should be used sparingly in complex antitrust litigation where motive

---

Such market is described in paragraphs 7 and 7a of the Amended Complaint. The reference in the latter paragraphs to "electronics catalog-directories" was to those publications that had the characteristics, and were distributed in the manner, described in paragraphs 7 and 7a of such Amended Complaint and in the answer to Interrogatory No. 43(i).

The answer to Interrogatory No. 43(i) in pertinent part was:

[T]he words "market for domestic advertising in electronics catalog-directories" mean the market for the purchase, by any United States supplier of products and services for the electronic original equipment market (hereinafter "OEM"), of advertising to be incorporated in electronics catalog-directories for distribution, without charge, to a controlled circulation purported to consist primarily of electronic design engineers in the United States who collectively specify or purchase products and services in all categories of products and services special to the electronic OEM.

....

[T]he words "electronic catalog-directories" mean reference books, published annually, designed to permit their economic manufacture and broad distribution without charge and to be retained in the workplace of the subscriber, and having a format that includes:

(a) a product directory which purports to be a listing of substantially all United States suppliers of products and services for the electronic OEM ...;

(b) advertising which is predominantly of product-data pages and which includes a separate catalog section, commonly denominated a "master" catalog, consisting of product-data pages alphabetically arranged by categories of products and services.

**4.** Two of the publications listed in note 2 *supra* are owned by Cox; if included in the relevant market, they would increase Cox's market share. Three are circulated to a specialized segment of the electronics industry. Three are directories but not "catalog directories," and do not contain as much product information as EEM or Gold Book. One is a broad-based product data book for all manufactured products including some electronics. The point is that precise market analysis would require close examination of each of the publications; it is not enough that, as the district court found, "[s]uppliers of [electronic] products utilize all the publications cited (as well as EEM and Gold Book) for the purpose of advertising their products." 566 F.Supp. at 508.

and intent play leading roles ....' " 566 F.Supp. at 505 (citing *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)). *See also George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 554–55 (2d Cir.1977). Here, we believe that significant issues of fact are contested by the litigants and thus that the court erred in granting summary judgment.[5]

■ As an initial matter, we believe that the court erroneously placed the burden of proof on Hayden for purposes of the defendants' motion for summary judgment. It is well established that "the burden [is] on the moving party to demonstrate the absence of any material factual issue genuinely in dispute...." *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1320 (2d Cir.1975). Nevertheless, in considering the motion by Cox and UTP, the district court stated: "[T]his court has determined that Hayden has failed to meet its threshold burden of substantiating its market definition limiting the relevant product market or submarket to one consisting solely of EEM and Gold Book." 566 F.Supp. at 510. Although Hayden clearly will have the burden at trial of establishing the relevant product market, it did not have that burden for purposes of the defendants' motion for summary judgment.

For complete summary judgment in favor of Cox and UTP to have been appropriate, the defendants would have to have shown that there were no material factual issues involving monopolization or attempted monopolization as raised by Hayden's section 2 claims, or concerning restraint of trade as alleged by its section 1 claim. As the appellant correctly observes, however, the court made no such findings, but instead limited its inquiry to the question of the proper market definition.

As the Supreme Court has stated, "[t]he offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1704, 16 L.Ed.2d 778 (1966). For Cox and UTP to prevail on a motion for summary judgment dismissing Hayden's section 2 claims, they would have to show, without disputed issue of fact, that EEM lacked monopoly power in the relevant market. Thus, assuming arguendo that the defendants established that the relevant product market was not limited to EEM and Gold Book, the question of EEM's monopoly power nevertheless remained.[6]

■ A party has monopoly power if it has "a power of controlling prices or unreasonably restricting competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389, 76 S.Ct. 994, 1004, 100 L.Ed. 1264 (1956); *see Standard Oil Co. v. United States*, 221 U.S. 1, 58, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911). As this court noted recently, a number of factors must be considered in determining whether monopoly power exists. In *Broadway Delivery Corp. v. United Parcel Service of America, Inc.*, 651 F.2d 122, 128 (2d Cir.), *cert. denied*, 454 U.S. 968, 102 S.Ct. 512, 70

---

5. It goes without saying that, since Hayden's motion for additional discovery was pending, it is another factor indicating that a grant of summary judgment was inappropriate. The trial court did not discuss this issue. We have, of course, observed in the past that summary judgment is inappropriate where one party seeks discovery on a material issue. *Schering Corp. v. Home Insurance Co.*, 712 F.2d 4, 7 (2d Cir.1983). So saying, we do not comment on whether Hayden's request for more information from UTP's merger files should have been granted; the trial court should at least have made a finding on the issue.

6. We agree with the appellant that its interrogatory answers, including that quoted at note 3 *supra*, cannot be construed as a concession that if the relevant market is larger than EEM and Gold Book, EEM is not a monopolist. Hence, Hayden's answers cannot be substituted for proof that there was no genuine issue of fact on the question of monopoly power.

L.Ed.2d 384 (1981), we stressed, following the Supreme Court's decision in *United States v. Columbia Steel Co.,* 334 U.S. 495, 527, 68 S.Ct. 1107, 1124, 92 L.Ed. 1533 (1948), that the strength of competition, the probable development of the industry, and consumer demand, as well as the percentage of market share enjoyed by the alleged monopolist, were among the factors pertinent to the determination of a section 2 claim.

■ Judge Costantino made no findings with respect to any of the factors bearing on the allegation of EEM's monopoly power. Stating that limiting the product market to EEM and Gold Book as Hayden urged would "ignore the marketplace realities," the court "concluded that plaintiff has failed to demonstrate that such a limited product market exists. Accordingly, the court need not compute defendants' 'monopoly power' within the relevant product market." 566 F.Supp. at 510. We must disagree. Since Cox and UTP moved for summary judgment on Hayden's section 2 claims, they had the burden of demonstrating that there was no factual support for the allegation that EEM had monopoly power, even if the relevant market was larger than Hayden maintained.

The authority cited by the district court, most notably *Fount-Wip, Inc. v. Reddi-Wip, Inc.,* 568 F.2d 1296, 1302 n. 3 (9th Cir.1978), does not support the conclusion that an assessment of monopoly power is unnecessary here. *Fount-Wip* involved a motion for judgment notwithstanding the verdict, not a motion for summary judgment. In that case all the evidence had been heard, and the appellate court concluded: "Because there was a complete failure of proof on the relevant market issue, we need not examine the adequacy of plaintiffs' efforts on the monopolization count in computing market shares. Nor need we consider whether [there] ... may be a 'well-defined submarket....'" *Id.* (citation omitted). On the defendants' motion

for summary judgment, the district court in the present case was not in a position to draw the conclusions that the court in *Fount-Wip* was able to reach.

■ Cox's and UTP's reliance on *ALW, Inc. v. United Air Lines, Inc.,* 510 F.2d 52 (9th Cir.1975), is similarly misplaced. Although that case did involve a motion for summary judgment, the reason that the court concluded that it "need not determine the precise scope of the relevant market" was that the plaintiff "ha[d] failed to provide any factual support whatever" for its contention that the defendant had monopoly power. *Id.* at 56. Here, Hayden introduced sufficient evidence below to raise a question of fact on its claim that EEM had monopoly power. Its papers before the district court made clear its contention that even if all of the nominated publications were included in the market, the defendant still had monopoly power.[7]

■ Thus, even if we assume that the district court was correct in finding that the relevant market consists of more than EEM and Gold Book, there remained a factual dispute about EEM's power in this market. It was not enough to determine, as Judge Costantino did, the "outer boundaries" of the relevant market. 566 F.Supp. at 508.

■ Summary judgment was also inappropriate on Hayden's claim under section 1 of the Sherman Act. The parties agree that this claim must be considered under the "rule of reason." Under the rule of reason analysis, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). Among the most important circumstances to be considered are those relating to the competitive characteristics of the relevant market. "Proof that the defendant's activi-

---

**7.** Appellants also note correctly that a party may have monopoly power in a particular market, even though its market share is less than 50%.

*See, e.g., Broadway Delivery Corp.,* 651 F.2d at 130.

ties had an impact upon competition in a relevant market is an absolutely essential element of the rule of reason case." *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 291 (9th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980). *Accord Columbia Metal Culvert Co. v. Kaiser Aluminum & Chemical Corp.*, 579 F.2d 20, 26 (3d Cir.), *cert. denied*, 439 U.S. 876, 99 S.Ct. 214, 58 L.Ed.2d 190 (1978); *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547, 562 (1st Cir.1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975).

■ Judge Costantino correctly appreciated that "a determination as to the boundaries of the relevant product market is essential in order to measure the anti-competitive effect if any, of defendants' activities." 566 F.Supp. at 511. He erred in concluding, however, that "Hayden's failure to adequately define the relevant product market or to demonstrate any indication of anti-competitive effect upon that market, is thus fatal to its Section 1 claim." *Id.* On the defendants' motion for summary judgment, the burden of showing that there was no factual dispute about the effect of EEM's alleged practices was on Cox and UTP, not Hayden. As with the section 2 claim, even if we were to agree with the district court that the relevant market was not limited to EEM and Gold Book, in the absence of proof that there was no genuine issue of fact on the competitive impact of the defendants' behavior, we would have to reverse.

■ Finally, we reach the question whether the court could have granted partial summary judgment to the defendants on the issue of market definition. In our view, there were clearly genuine issues of fact concerning the definition of the relevant market, thus precluding even partial summary judgment. As to each of the nine publications nominated by Cox and UTP, Hayden submitted affidavits asserting that the products differed from EEM and Gold Book in size, intended audience, format, and frequency of publication. *See* note 4 *supra*. This was sufficient to raise the question of market definition as a matter of fact in issue.[8]

■ In addition, we believe that, in assessing the relevant market, the court neglected the factor of cross-elasticity of demand or "purchaser willingness to substitute,"[9] the importance of which was emphasized in the leading case of *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). In that case the court stated: "Determination of the competitive market for commodities depends on how different from one another are the offered commodities in character or use, *how far buyers will go to substitute one commodity for another.*" *Id.* at 393, 76 S.Ct. at 1006 (emphasis added). The Court used the concept of "reasonable interchangeability" to take account of purchaser willingness to substitute, and held that "[w]hat is called for is an appraisal of the 'cross-elasticity' of demand in the trade." *Id.* at 394, 76 S.Ct. at 1007.

There is persuasive authority for interpreting *du Pont* as requiring consideration of cross-elasticity of demand in determining an appropriate market definition. The Ninth Circuit, for example, held recently that: "The principle most fundamental to product market definition is 'cross-elasticity of demand' for certain products or services. Commodities which are 'reasonably

---

**8.** As Judge Werker observed in *Jennings Oil Co. v. Mobil Oil Corp.*:

The conclusion that genuine issues of material fact preclude a finding as to relevant market as a matter of law is not unexpected. It frequently has been observed that "[a] pronouncement as to market definition is not one of law, but of fact ...."

539 F.Supp. 1349, 1352 (S.D.N.Y.1982) (citations omitted).

**9.** Cross-elasticity of demand refers to the change in the demand by consumers for one product as a result of a change in the price of another product. 2 P. Areeda & D. Turner, *Antitrust Law* 349 (1978); L. Sullivan, *Antitrust* 54–55 (1977). *See Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510 (1962).

interchangeable' for the same or similar uses normally should be included in the same product market for antitrust purposes." *Kaplan v. Burroughs Corp.*, 611 F.2d at 291. Similarly, the Third Circuit stated: "[D]efining a relevant product market is a process of describing those groups of producers which, because of the similarity of their products, have the ability—actual or potential—to take significant amounts of business away from each other." *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir.), *cert. denied*, 439 U.S. 838, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978). Likewise, as Judge Mishler has stated:

> To determine whether [products] are in competition in a particular industry it is first necessary to decide whether they can be used for the same purpose—whether they are functionally interchangeable .... Having found one or more products functionally interchangeable with [the product] in a particular use, the next question to be resolved is one of purchaser reaction—the willingness or readiness to substitute one for the other.

*United States v. Chas. Pfizer & Co.*, 246 F.Supp. 464, 468 (E.D.N.Y.1965) (footnote omitted). We are persuaded that, as a general rule, the process of defining the relevant product market requires consideration of cross-elasticity of demand.

In light of the foregoing, we reverse the summary judgment of the district court and remand for further proceedings in accordance with this opinion.

Judgment reversed.