Jacob Isaac GUTWEIN, Rachel Gutwein, Plaintiffs-Appellants,

v.

ROCHE LABORATORIES, DIVISION OF HOFFMAN–LA ROCHE, INC., and Roche Products, Inc., Defendants-Appellees.

No. 1207, Docket 84–7009.

United States Court of Appeals, Second Circuit.

Argued May 7, 1984.

Decided July 13, 1984.

Anthony Motta, New York City (Kieffer & Hahn, New York City), for plaintiffs-appellants.

Steven B. Prystowsky, New York City (Allan Fudim, Lester, Schwab, Katz & Dwyer, New York City), for defendants-appellees.

Before FRIENDLY and WINTER, Circuit Judges, and LASKER, Senior District Judge.[*]

WINTER, Circuit Judge:

Jacob and Rachel Gutwein [1] appeal from a grant of summary judgment on their claim that a drug manufactured and distributed by the defendants caused Mr. Gutwein's blindness. Because the Gutweins were not afforded the full ten-day notice period required by Rule 56(c), Fed.R.Civ.P.,

---

[*] The Honorable Morris E. Lasker, Senior District Judge, Southern District of New York, sitting by designation.

1. Rachel Gutwein's cause of action is a derivative claim for loss of consortium, and is thus governed by the outcome of Mr. Gutwein's action.

before the district court granted summary judgment, we reverse and remand.

## BACKGROUND

In late 1977, Mr. Gutwein returned to the United States after a stay in Venezuela with a urinary tract infection which he had been self-treating with an antibiotic. He had also been taking an outdated prescription for an antimalarial drug. Mr. Gutwein consulted a urologist, Dr. Armando Del Rio, who treated him with an injection of tetracycline, an antibiotic, and gave him two prescriptions, one for a painkiller and the other for Bactrim, a drug commonly used in the treatment of urinary tract infections. Bactrim, which is manufactured and distributed by the defendant-appellee Roche Laboratories ("Roche"), is composed of two compounds, trimethoprim, an antibiotic, and sulfamethoxazole, a bacteriostatic sulfonamide used in the treatment of urinary tract infections.

Mr. Gutwein filled the prescriptions on December 7, 1977 and ingested the painkiller and the Bactrim as prescribed until December 9, 1977, when he noted visual changes in his left eye. The next day he consulted an ophthalmologist who diagnosed his condition as optic neuritis, an inflammation of the optic nerve. When Mr. Gutwein began to experience visual changes in his right eye as well, he was hospitalized at Lenox Hill Hospital where his vision continued to deteriorate bilaterally. Eventually he lost most of his sight.

Two consulting physicians at Lenox Hill, Drs. Cahill and Bloch, wrote in the hospital record that Gutwein's loss of vision had a probable toxic etiology. None of the treating or consulting physicians specifically attributed Gutwein's optic neuritis to his ingestion of Bactrim. His recent exposure to that drug, however, as well as exposure to the outdated antimalarial drug, to a chemical used to clean up bat guano, and possibly to methyl alcohol—all known or possible causes of blindness—was noted in the hospital record. The record also indicated an intent to make further inquiry into these and other possible causes of blindness.

After discharge from the hospital, Mr. Gutwein was seen twice by a neuro-ophthalmologist, Dr. Smith, who testified in a deposition that his primary impression was that Mr. Gutwein's optic neuritis was caused by an acute infection and that a toxic reaction was a "less likely explanation." Dr. Smith opined that of the "hundreds" of cases of optic neuritis that he had seen in his career, 50% were of unknown or undetermined etiology.

Mr. Gutwein filed the instant lawsuit against Roche in November, 1980, alleging, *inter alia,* that the sulfamethoxazole component in Bactrim had caused his optic neuritis and that Roche had failed adequately to warn of the risks associated with use of the drug.

Over the next three years, the parties engaged in desultory pretrial discovery under the supervision of Magistrate Chrein. On April 6, 1983 Roche began deposing Mr. Gutwein's designated expert on causation, one Phyllis Kaplan, a toxicologist. After the first day, Ms. Kaplan refused to continue the deposition until she was compensated for services rendered to date. Mr. Gutwein was unable to come to a satisfactory arrangement with her or to comply with the Magistrate's order to produce her for further deposition by Roche. The Magistrate then recommended to the district judge that Ms. Kaplan be precluded from testifying at the trial, which was scheduled for September 12, 1983. Although Mr. Gutwein's counsel was still hopeful that the problem of compensating Ms. Kaplan would be resolved prior to trial, she was not listed as a witness in the pretrial order which was filed September 2, 1983.

On September 7, five days before the trial was scheduled to commence, Mr. Gutwein's counsel received a copy of Roche's motion for summary judgment, postmarked September 6, 1983, with a return date of September 12, 1983. This motion was filed by Roche only after learning of Ms. Kaplan's unavailability. In supporting papers, Roche contended that there was no material issue of fact, since (1) there was no evidence that Roche knew or should

have known of any danger of optic neuritis inherent in the use of Bactrim which would have triggered a duty to warn; (2) there was no evidence that ingestion of Bactrim had caused Mr. Gutwein's optic neuritis; and (3) the urologist would not have alerted Mr. Gutwein to the danger of optic neuritis even if Roche had issued a warning.

Mr. Gutwein argued in opposition that there were contested issues of material fact, namely: (1) whether optic neuritis was a potential side effect of Bactrim; (2) whether Bactrim caused Mr. Gutwein's optic neuritis; and (3) whether the urologist would have warned Mr. Gutwein of the danger of optic neuritis had Roche informed the physician that the condition was a potential side effect of Bactrim.

As supporting exhibits Mr. Gutwein submitted medical literature describing cases of optic neuritis occurring after use of certain sulfonamide drugs (neither sulfomethoxazole nor Bactrim is specifically mentioned in the articles), Lenox Hill Hospital records suggesting a toxic etiology for Mr. Gutwein's optic neuritis, and various deposition transcripts. In opposing the motion for summary judgment, Mr. Gutwein's counsel also argued that, because the defendant's motion did not give the ten days notice required by Rule 56(c), Fed.R.Civ.P., he was unable to obtain supporting affidavits from the Gutweins and from the consulting physicians at Lenox Hill Hospital.

After a hearing on September 12, 1983 in which Mr. Gutwein again raised the notice defect, Judge Nickerson granted summary judgment for Roche based on lack of evidence on the issues of causation and duty to warn.

## DISCUSSION

On appeal, Mr. Gutwein contends that because he was afforded only five days to respond to Roche's motion for summary judgment, he was deprived of the opportunity to oppose the motion afforded by Rule 56(c). We agree and reverse.

Rule 56(c) provides that:

The [summary judgment] motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits....

Although the burden is on the moving party to establish the lack of a genuinely disputed material issue of fact on a motion for summary judgment, *Hayden Publishing v. Cox Broadcasting*, 730 F.2d 64, 68 (2d Cir.1984), when this has been met the burden shifts to the non-moving party to produce sufficient evidence to support a claim that a genuine factual issue exists. *See id.* at 69. The ten-day notice period required by Rule 56(c) is thus designed to provide a reasonable opportunity for the non-moving party to meet its burden of production. *Herzog & Straus v. GRT Corp.*, 553 F.2d 789, 792 n. 5 (2d Cir.1977).

Conceding that its motion for summary judgment did not comply with Rule 56(c), Roche urges that we affirm on the grounds that Mr. Gutwein has not demonstrated prejudice resulting from the shortened response period. In *Winbourne v. Eastern Air Lines*, 632 F.2d 219 (2d Cir.1980), we expressed a preference for strict adherence to the ten-day rule, noting that the opposing party must be allowed "adequate opportunity" to respond. While we may have left the door open for application of a harmless error rule, *id.* at 223 n. 6, we believe that use of such a rule must be limited to extraordinary cases in which the ten day notice is impractical, and it is absolutely clear that the non-moving party suffered no prejudice from a shortening of the period. This follows, we believe, from the non-moving party's burden of production and the need for time to marshall and prepare documents indicating the presence of a disputed factual issue. Since preparation of papers to oppose a motion for summary judgment may differ materially from preparation for trial, the better practice is to establish discovery schedules which allow such motions to be made and considered prior to the trial date and simply to deny motions which do not afford the necessary notice.

In the present case, Mr. Gutwein's observance of certain religious holidays precluded consultation with counsel for two of the allotted five notice days. He claims that as a consequence he had insufficient time to prepare and execute a personal affidavit. *Cf. Alghanim v. Boeing Co.,* 477 F.2d 143, 148 (9th Cir.1973) (error to deny extension requested because of problems in communicating with affiant, where moving party did not comply with ten-day notice provision). More important, in view of the centrality of the causation issue, is the fact that Mr. Gutwein's counsel was unable in the time available to obtain affidavits from the consulting physicians at Lenox Hill. Affidavits from Drs. Cahill and Bloch, listed as plaintiffs' witnesses in the pretrial order, might well have put the question of causation into sharper dispute than it appears on the record now before us and might have warranted submission of the issue to a trier of fact. The Lenox Hill Hospital records are not adequate substitutes for such affidavits since they indicate on their face that the analysis of the cause of Mr. Gutwein's blindness was then ongoing, and there is no reason to assume that such further analysis never occurred or did not bolster Mr. Gutwein's claim.[2] The fact that this case was scheduled for trial on September 12th is not cause for shortening the ten-day period on the grounds that appellant's evidence had to be marshalled within the shorter period anyway. Opposition to the motion for summary judgment required the preparation and execution of documents by the 12th, tasks considerably different from summoning witnesses for oral testimony at a trial beginning on the 12th. It may be, therefore, that granting either more time to prepare opposition to the motion or going ahead with the trial would have led to a different result in the instant case.

We believe that where a party claims an inability to prepare adequate opposition to a motion for summary judgment within a shortened response period, the non-moving party must be afforded the full response period mandated by Rule 56(c), absent reason to believe that that claim is demonstrably frivolous.[3] In view of the unsettled nature of the evidence in the present case, we make no comment on the merits.

Reversed and remanded.

---

2. Defendants failed to demonstrate the absence of a dispute with respect to whether the urologist would have failed to warn Mr. Gutwein about optic neuritis had Roche included an appropriate warning on the bactrim package insert. His deposition testimony, as printed, appears to support Mr. Gutwein's position. The doctor's uncross-examined handwritten correction supports the defendants. This is not sufficient for purposes of summary judgment.

3. Fed.R.Civ.P. 6(e) provides:
   Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon him by mail, three days shall be added to the prescribed period.

Thus, strictly speaking Gutwein was entitled to thirteen days in which to respond to Roche's summary judgment motion. Although we here reverse because of the failure to afford Gutwein the ten-day period prescribed by Rule 56(c), we do not imply that the extra notice period provided by Rule 6(e) is either discretionary or unimportant.