STATE OF NEW YORK by Robert ABRAMS, Attorney General, Plaintiff,

v.

ANHEUSER–BUSCH, INC., et al., Defendants.

UNIONDALE BEER CO., INC., Plaintiff,

v.

ANHEUSER–BUSCH, INC., et al., Defendants.

CUMBERLAND FARMS, INC., Plaintiff,

v.

ANHEUSER–BUSCH, INC., et al., Defendants.

VASILIOW COMPANY, INC., et al., Plaintiffs,

v.

ANHEUSER–BUSCH, INC., et al., Defendants.

86 CV 2345, 86 CV 2400, 86 CV 2516 and 86 CV 3227.

United States District Court, E.D. New York.

Nov. 19, 1987.

Leonard W. Wagman, Golenbock and Barrell, New York City, for Midway Beverage Corp.

Ross Rhodes, Booth, Lipton & Lipton, c/o Parker, Chapin, Flattau & Klimpl and David Bershad, Milberg Weiss Bershad Specthrie & Lerach, New York City, for Vasiliow Co., Inc. and Budd Beverages, Inc.

David Beckwith, Foley & Lardner, Milwaukee, Wis., for G. Heileman Brewing Co., Inc.; Gary Hoppe, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, Local Counsel.

Jerome I. Chapman, Arnold & Porter, Washington, D.C., for Miller Brewing Co.; Adeeb Fadel, Hunton & Williams, New York City, Local Counsel.

Peter E. Moll, Howrey & Simon, Washington, D.C. for Anheuser–Busch, Inc.; William Pelster, Skadden Arps Slate Meagher & Flom, New York City, Local Counsel.

Hugh Latimer, Pepper, Hamilton & Sheetz, Washington, D.C., for The Stroh Brewery Co.; J. Douglas Richards, O'Sullivan, Graev, Karabell & Gross, New York City, Local Counsel.

Robert Abrams, Atty. Gen., State of N.Y., New York State Dept. of Law by Alan Pfeffer, New York City, for State of N.Y.

Ernest Gellhorn, Jones, Day, Reavis & Pogue, Washington, D.C., for N.Y. State Beer Wholesalers Ass'n.

Robert Getman, Kelley, Drye & Warren, New York City, for Boening Bros., Inc., and Jing Beer Distributors, Inc., d/b/a Union Beer Distributors.

Matthew Feigenbaum, Stein, Davidoff & Malito, New York City, for Reiters Beer Distributors, Inc.

Gerald J. Rodos, Barrack, Rodos & Bacine, Philadelphia, Pa., for Uniondale Beer Co., Inc.; Charles van de Walle, Martin, van de Walle, Guarino & Donahue, Great Neck, N.Y., Local Counsel.

Harold E. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for Cumberland Farms, Inc.; Charles van de Walle, Martin, van de Walle, Guarino & Donahue, Great Neck, N.Y., Local Counsel.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants The Stroh Brewery Company ("Stroh") and G. Heileman Brewing Company, Inc. ("Heileman") move this Court for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no issue of material fact as to the question that they lack market power in a relevant market and hence they may not be held to have violated any antitrust law.

### PROCEDURAL BACKGROUND

This motion concerns four actions commenced against four brewers, Anheuser–Busch, Inc. ("A–B"), Miller Brewing Company ("Miller"), Stroh, and Heileman; four named wholesalers; an unspecified number

of unnamed wholesalers; and a beer wholesalers' trade association. The plaintiffs in the actions are the State of New York ("the State"), Uniondale Beer Co., Inc. ("Uniondale") and Cumberland Farms, Inc. ("Cumberland"), beer retailers, and Budd Beverages, Inc. ("Budd"), an independent beer wholesaler.

Stroh originally moved for summary judgment on September 26, 1986, and Heileman on December 24, 1986. The other brewer defendants also moved for summary judgment at about the same time, but have withdrawn their motions. On January 28, 1987, during an initial hearing on the summary judgment motions, this Court granted the plaintiffs the opportunity to take discovery on the defendants' market power. The plaintiffs have conducted some discovery and Stroh and Heileman now renew their motions for summary judgment.

For the reasons set forth below summary judgment is denied.

FACTS

These actions concern a system of beer distribution under exclusive wholesale agreements. Plaintiffs allege that starting in 1982, all of the brewer defendants entered into such agreements with distributors in the State of New York. Under these agreements, the brewers divided New York into territories and appointed a single wholesaler (or franchisee) for each territory. The brewers agreed to allow wholesalers to sell beer in particular territories. Wholesalers, in turn, agreed not to sell beer directly or indirectly in any other wholesaler's territory.

As a result of these "airtight exclusives", the independent wholesale plaintiffs allege that intrabrand competition among wholesalers ceased. These plaintiffs contend that prior to the institution of the exclusive territory agreements, they were able to purchase beer from any wholesaler and sell it to retailers throughout the State. This practice is known as transhipping, and these plaintiffs contend that it kept the price of beer at competitive levels in such area. Further, these plaintiffs contend that the purpose and effect of the exclusive

territory agreements was to eliminate transhipping.

The independent wholesale plaintiffs allege that the exclusive territory agreements constitute unlawful vertical restraints. They also allege a horizontal conspiracy among all the defendants to fix the price of beer in New York.

The retailer plaintiffs allege principally a single horizontal conspiracy by the brewer defendants, the "franchised" wholesaler defendants, and the defendant wholesale trade association to increase the price of beer in New York. They contend that the conspiracy constitutes a *per se* violation of section 1 of the Sherman Act.

The State of New York alleges that the exclusive territory agreements are unreasonable restraints of trade under both the Sherman Act, 15 U.S.C. § 1, *et seq.*, and the New York State Donnelly Act, N.Y.Gen. Bus. Law § 340, *et seq.*, because they eliminate competition in the market by the independent wholesalers and artificially raise the price of beer.

DISCUSSION

1. *Vertical Claims*

■ Exclusive territory agreements are known as non-price vertical restraints. Such restraints are not illegal *per se* under section 1 of the Sherman Act, 15 U.S.C. § 1 (1982); rather, their illegality is tested by the rule of reason. *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58–59, 97 S.Ct. 2549, 2561–2562, 53 L.Ed.2d 568 (1977). Such restraints are not considered illegal *per se* because they provide both benefits and detriments to competition. *Eiberger v. Sony Corp. of America*, 622 F.2d 1068, 1075 (2d Cir.1980). In the instant case, intrabrand competition is inhibited because distributors of the same brand of beer do not compete with one another. However, this intrabrand restraint may heighten interbrand competition by increasing a distributor's efficiency within his exclusive territory.

■ Under the rule of reason, the "factfinder weighs all the circumstances of a case in deciding whether a restrictive practice should be prohibited as an unreason-

able restraint on competition." *Sylvania,* 433 U.S. at 49, 97 S.Ct. at 2557. *See also Arizona v. Maricopa Medical Society,* 457 U.S. 332, 343, 102 S.Ct. 2466, 2472, 73 L.Ed. 2d 48 (1982). In *Chicago Board of Trade v. United States,* 246 U.S. 231, 38 S.Ct. 242, 62 L.Ed. 683 (1918), Mr. Justice Brandeis set forth the factors that the fact-finder must use to determine whether a restraint on balance promotes competition or "suppresses or even destroys competition." *Id.* at 238, 38 S.Ct. at 244. In applying the rule of reason a fact-finder must:

> Consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the peculiar remedy, the purpose and end to be sought....

*Id.* In *Sylvania,* the Supreme Court did not emphasize one factor over another, rather the Court stated that the fact-finding court must weigh "all the circumstances." 433 U.S. at 49, 97 S.Ct. at 2557.

■ Defendants Stroh and Heileman argue that before a court may apply the rule of reason, the court must find, as a threshold question, that a defendant possesses market power in a relevant market. Although it is uncertain whether the parties have actually agreed on a relevant market,[1] for the purpose of this motion for summary judgment all parties use each brewer's State-wide market share. Stroh and Heileman each claim that it holds an insufficient market share to possess any market power. Stroh has a share of nearly 8 per cent;[2] Heileman a 5 per cent share.[3]

Stroh's and Heileman's position is supported by several circuit courts of appeal which have adopted a two-step test under the rule of reason to show an anti-competitive balance. *Assam Drug Co. v. Miller*

*Brewing Co.,* 798 F.2d 311, 316 (8th Cir. 1986); *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 678 F.2d 742 (7th Cir. 1982); *Muenster Butane, Inc. v. Stewart Co.,* 651 F.2d 292 (5th Cir.1981). As a first and threshold step, the plaintiff must prove that the defendant has market power. It is only after a plaintiff shows market power that the court may begin the balancing of competitive and anticompetitive effects under the rule of reason. The courts applying the two-step analysis appear overwhelmed by the complexity of the rule of reason analysis and, therefore, have adopted the more simplistic two-step approach. *See Assam Drug,* 798 F.2d at 315 ("The rule of reason is a vacuous standard and ... provides little concrete direction...."); *Valley Liquors,* 678 F.2d at 745 ("[T]his test of illegality is easier to state than to apply....").

It seems clear to us, however, that the Second Circuit has not adopted this two-step analysis. In *Eiberger v. Sony Corp. of America,* 622 F.2d 1068 (2d Cir.1980), the Second Circuit unequivocally rejected defendant Sonam's argument that the plaintiff "must show that Sonam's anticompetitive activities had some impact on the ... market as a whole." *Id.* at 1081. In that case Sonam had a 12 per cent share of the dictation machine market. In the present case, Stroh and Heileman have shares of 7.9 per cent and 5 per cent respectively. Further, the Second Circuit stated in *Eiberger* that a finding of an anticompetitive impact on intrabrand competition can support a finding that section 1 has been violated. *Id.* Thus, if we conclude that a vertical agreement in a State-wide market has an anticompetitive impact on intrabrand competition, under *Eiberger* we must find a potential section 1 violation. Similarly, in *Copy–Data Systems, Inc. v. Toshiba America, Inc.,* 663 F.2d 405 (2d Cir.1981), the Second Circuit stated that to

---

1. The brewers argued that there was no State-wide market in their opposition to the class action certification motions. For the present motion they assume that the relevant market is State-wide. Plaintiffs' (Vasiliow) Memorandum in Opposition to Motion for Summary Judgment, at 2.

2. Affidavit of Roger Fridholm in Support of Stroh's Motion for Summary Judgment.

3. Statement of Facts as to which there is no Genuine Issue on behalf of Heileman.

apply the rule of reason theory, it would make "an inquiry into the goals and effects of the restrictions on both intrabrand and interbrand competition...." *Id.* at 410 n. 5. The Court noted that the defendant was an "insignificant force in the American market for copiers ...", *id.* at 410, but made no mention of a need to determine market power prior to applying the rule of reason. *See also North American Soccer League v. National Football League,* 670 F.2d 1249, 1259–60 (2d Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 499, 74 L.Ed.2d 639 (1982) (no mention of market share as a threshold question in rule of reason analysis).

The Second Circuit approach is in accord with the Supreme Court's command in *Sylvania* that the fact-finder applying the rule of reason weigh all the facts and circumstances of the case. *See Sylvania,* 433 U.S. at 49, 97 S.Ct. at 2557. One of the factors to be given equal weight in this analysis is the "facts peculiar to the business to which the restraint is applied...." *Chicago Board of Trade,* 246 U.S. at 238, 38 S.Ct. at 244.

The facts of this case show why a court should consider all relevant factors under the traditional application of the rule of reason. Market share alone in the beer industry does not reflect the potential for anticompetitive results. The Second Circuit has concluded that among the most important factors in a section 1 rule of reason analysis are "those relating to the competitive characteristics of the relevant market." *Hayden Publishing Co. v. Cox Broadcasting Corp.,* 730 F.2d 64, 69 (2d Cir.1984). For example, in the beer market one of the competitive characteristics is the high cost of entry into the market. Barriers to entry are a significant factor in a participant's power to exert an anticompetitive effect for "the lower the barriers to entry, and the shorter the lags of new entry, the less power existing firms have." *Bell Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.,* 784 F.2d 1325, 1335 (7th Cir.1986). Since relatively few firms share a large percentage of the beer market, high barriers to entry can magnify the effects of industry-wide vertical agree-

ments, such as the agreements at issue in this case. *See* Posner, *Economic Analysis of Law* 227–28 (2d ed. 1977). For this reason alone, the market shares of the individual brewers should not be a basis on which we grant summary judgment.

The independent wholesalers allege that the exclusive distribution agreements have affected intrabrand competition by freezing them out of the market. Similarly, the State and the retailers contend that these vertical agreements have had the anticompetitive effect of raising prices across the board in the beer market. These are clear anticompetitive impacts on intrabrand competition. Under *Eiberger,* there is no basis on which this Court may grant summary judgment. The rule of reason must be applied to balance the anticompetitive effect on intrabrand competition against the alleged benefits to interbrand competition.

### 2. *Horizontal Claims*

The independent wholesaler and retailer plaintiffs argue that the rule of reason is not relevant to their price-fixing claims. The Supreme Court stated in *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940), that price-fixing was so clearly anticompetitive that proof of unreasonableness was not necessary and price-fixing was illegal *per se. Id.* at 223, 60 S.Ct. at 844; *United States v. Koppers Co., Inc.,* 652 F.2d 290, 293–94 (2d Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981).

Stroh and Heileman contend that they acted unilaterally in entering into the distribution agreements with their distributors. However, plaintiffs contend tht the brewer defendants conspired to set up these agreements. This is a question of fact to be decided at trial.

### 3. *Effect of Recent Opinion in The Package Shop, Inc. v. Anheuser–Busch*

This memorandum was initially drafted prior to the issuance of the opinion by the Honorable Dickinson R. Debevoise in *The Package Shop, Inc. v. Anheuser–Busch,*

*Inc.*, 675 F.Supp. 894 (D.N.J.1987). We have considered that opinion and believe that our decision conforms to the law as it now stands in the Second Circuit.

First, the total market situation in New Jersey does not appear to include (or exclude) transhippers. *Id.* at 913 n. 5. In New York the exclusion of the transhippers is allegedly one of the primary reasons for the anticompetitive effect of the rise in the price of beer. Additionally, in *Package Shop* only Miller and Anheuser–Busch were before the Court. In the instant case we have a larger percentage of the market before the Court represented by Stroh and Heileman in addition to Miller and Anheuser–Busch. Although Judge Debevoise rejected a "feedback effect" theory that defendants followed one another in raising beer prices, he did so on the ground that plaintiffs had not submitted sufficient evidence to prove such a theory. *Id.* at 942. No discovery has been taken in this case on this matter, so it would be premature to reject such a theory at this time.

Finally, although Judge Debevoise did conclude that the market shares of Anheuser–Busch and Miller did not support a conclusion that those brewers had market power, *id.* at 942–943, he stated that "reliance on [market share as the] singular economic indication of market power appears to be misplaced." *Id.* at 941. That statement concurs with this Court's conclusion that market share as a threshold question is not determinative of market power.

Summary judgment is hereby denied.

SO ORDERED.