**DISENOS ARTISTICOS E INDUSTRIALES, S.A., a Spanish corporation, Plaintiff,**

v.

**Edward WORK, an individual; Dolores Work, an individual; Karen–Leslie Co., a partnership and Karen–Leslie Co., Inc., a New York corporation, Defendants.**

**KAREN–LESLIE CO., INC., a New York corporation, Counterplaintiff,**

v.

**DISENOS ARTISTICOS E INDUSTRIALES, S.A., a Spanish corporation; Weil Ceramics & Glass, Inc., a New York corporation; and Lladro, S.A., a Spanish corporation, Counterdefendants.**

**WEIL CERAMICS & GLASS, INC., a New York corporation, Plaintiff,**

v.

**Edward WORK, an individual; Dolores Work, an individual; and Karen–Leslie Co., Inc., a New York corporation, Defendants.**

Nos. 83 Civ. 4149, 84 Civ. 1964.

United States District Court, E.D. New York.

May 15, 1989.

As Amended May 30, 1989.

Bernard R. Gans and Charles Rosenberg, Poms, Smith, Landé & Rose, Los Angeles, Cal., and Anthony F. LoCicero, Amster, Rothstein & Engelberg, New York City, for plaintiffs.

David Brown, Garden City, N.Y., and Eric H. Weisblatt, Burns, Doane, Swecker & Mathis, Alexandria, Va., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Pursuant to Fed.R.Civ.P. 56, counterdefendants have moved for summary judgment on the antitrust counterclaims. For the reasons stated below, the motion is granted.

## DISCUSSION

▪ Counterplaintiffs' antitrust claims challenge the legality of restrictions placed on retailers of Lladro figurines by the sole United States distributor of those figurines, Weil Ceramics & Glass ("Weil"). These restrictions require Lladro retailers to sell Lladro figurines only at retail—that is, not to customers who wish to resell them—and only from locations approved by Weil.

In its previous memorandum and order in this case, the court granted counterdefendants' motion for summary judgment on the antitrust counterclaims in part, and denied it in part because the parties had not sufficiently refined their respective definitions of the "relevant market." However, the court expressly rejected counterplaintiffs' theory that the relevant market could be limited to Lladro figurines alone. The court advised the parties that "with respect to any renewed motion for summary judgment, the issue of market definition is critical." *Disenos Artisticos E Industriales, S.A. v. Work,* 676 F.Supp. 1254, 1274 (E.D. N.Y.1987).

Now, counterdefendants have refined their definition of the "relevant market" as being the "high quality decorative giftware market." Lladro figurines are said to have comprised only 5% of total sales in that market during the relevant time period of 1978–81. Counterdefendants have supported their contentions with affidavits from executives whose firms compete in this alleged relevant market, and from a trade magazine editor.

In response, counterplaintiffs offer nothing more than an almost indistinguishable variant of the theory which the court previously rejected: namely, that the relevant market is "Lladro figurines." They read the court's prior rejection of this single-product market definition as referring only to the retail market and not to the wholesale market. Revising their theory accordingly, they now argue that counterdefendants used their monopolistic power over the wholesale market for Lladro figurines to eliminate discount competition at the retail level. Such behavior, they assert, falls within an exception to the general rule that a single product cannot be its own relevant market. That exception is when "the manufacturer of a unique product uses his control over one market, or level of competition, to eliminate competition at another level or submarket." *Domed Sta-*

*dium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 489 (5th Cir.1984).

Counterplaintiffs' argument is unavailing. As on the previous motion for summary judgment, counterplaintiffs have established only that Lladro figurines inspire intense brand loyalty among some consumers. It is to be expected that some retailers who serve these customers will accept no substitute for the Lladro product.[1] However, the fact that some retailers echo the brand loyalties of their customers furnishes no basis for employing a single-product market definition.

Counterplaintiffs mistakenly rely upon *Jennings Oil Co. v. Mobil Oil Corp.*, 539 F.Supp. 1349 (S.D.N.Y.1982). *Jennings Oil* concerned a "dual distribution" situation in which a manufacturer was competing with its own wholesale distributors in selling its products to retailers. Plaintiff in *Jennings*, a distributor of Mobil products, claimed that Mobil was attempting to crush the competing distributors by charging them higher prices for Mobil products than it charged in direct sales to Mobil service stations. Thus, plaintiff claimed that Mobil was using its market power over its own products to monopolize sales of those products to Mobil service stations.

The court denied summary judgment because—in sharp contrast with the instant case—genuine fact issues existed as to whether the plaintiff distributor was precluded, by the terms of its distributorship agreement and by federal petroleum alloca-

tion regulations, from obtaining petroleum products from any firm but Mobil. *Id.*, 539 F.Supp. at 1351–52.

No such factual issue exists here. It is undisputed that Lladro retailers are free to purchase other brands of decorative giftware besides Lladro. The restrictions imposed upon them by Weil merely prevent them from becoming, in effect, unauthorized wholesalers or distributors. However, Lladro has every right to designate Weil as its sole United States wholesale distributor.[2] Antitrust law recognizes that "[e]very manufacturer has a natural monopoly in the sale and distribution of his own product, especially when sold under his own private brand or trade name[.]" *Disenos*, 676 F.Supp. at 1274 (citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment should be granted. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (test employed on summary judgment motion is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented"). The court finds that—even assuming that a single-product market definition is legally cognizable in certain limited situations—a rational trier of fact, on

1. The only new evidence which counterplaintiffs have submitted in support of their revised single-product market definition consists of two affidavits, one by Mr. Work himself and another by Mr. Kenneth Klarman, a discount retailer to whom Work used to sell Lladro figurines. The affidavits state, on the basis of the affiants' personal business experiences, that because of the fanatical devotion of certain consumers to Lladro figurines, most retailers who carry Lladro will accept no other brands as substitutes. However, as counterdefendants point out, this proves only that Mr. Work was selling to retailers, including Mr. Klarman, who had already decided which brand of porcelain figurines they wanted to buy. As this court previously ruled, proof of brand loyalty on the part of some purchasers does not establish that the favored brand constitutes its own relevant market.

Moreover, the newly-submitted affidavits fly in the face of Mr. Work's own deposition testimony suggesting that Lladro figurines occupy the middle range of price and quality in the market for high quality porcelain figurines. *See* Counterdefendants' Memorandum of Points and Authorities in Support of the Motion for Summary Judgment Regarding the Antitrust Issues, Exh. I at p. 84–85.

2. Another pertinent distinction between this case and *Jennings Oil* is that defendant in the latter case was accused of trying to eliminate *existing* wholesale distributors with whom it was already competing. Here, Weil is the sole distributor, no competing distributor exists, and no business entity is in danger of being eliminated by the continuation of Weil's exclusive distributorship.

this record, could not find that this is one of those situations. Because counterplaintiffs have the burden of establishing the definition of the relevant market at trial, *Disenos Artisticos*, 676 F.Supp. at 1274, and the only definition they have proffered verges on legal insufficiency and is unsupported by any probative or credible evidence, summary judgment should be granted against them. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).[3] *See also Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988) (summary judgment on Sherman Act § 2 claim was properly granted against plaintiffs whose market definition was "implausible as a theoretical matter," and was "an awkward attempt to conform their theory to the facts they allege[d]," and did not "reflect any relevant market evidenced in the record").

3. At oral argument, counterplaintiffs cited *Hayden Publishing Co. v. Cox Broadcasting Corp.*, 730 F.2d 64 (2d Cir.1984) to show that summary judgment is inappropriate here. The court finds that the Supreme Court's opinion in *Catrett* casts doubt on the validity of *Hayden Publishing*.

In *Hayden Publishing*, the district court had granted defendants' summary judgment motion on claims brought under sections 1 and 2 of the Sherman Act. The Second Circuit reversed on the grounds that (1) the defendants had not carried their burden of demonstrating the absence of a factual dispute regarding definition of the relevant market, and (2) even assuming that the district court properly accepted the defendants' market definition, it failed to make a determination of defendants' power within that market.

As to its first grounds for reversal, the Court of Appeals wrote:
As an initial matter, we believe that the [district] court erroneously placed the burden of proof on [plaintiff] for purposes of the defendants' motion for summary judgment.... Although [plaintiff] clearly will have the burden at trial of establishing the relevant product market, it did not have that burden for purposes of the defendants' motion for summary judgment.
*Id.*, 730 F.2d at 68.

However, *Catrett* makes it clear that the burden of persuasion on the elements of the cause of action never leaves the plaintiff (or counterplaintiff), even when defendants bring a motion for summary judgment. As stated in that opinion:

Accordingly, the court grants counterdefendants' summary judgment motion as to all the antitrust counterclaims.

SO ORDERED.

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.
*Id.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (emphasis added).

Here, the counterplaintiffs will have to prove the relevant market definition as an essential element of their case at trial. However, as previously noted, their papers in opposition to summary judgment indicate that they will rely on a market definition which verges on legal insufficiency and which is unsupported by the record evidence. Accordingly, summary judgment is warranted under *Catrett*. *Accord Belfiore v. New York Times Co.*, 826 F.2d 177, 180 (2d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1030, 98 L.Ed.2d 994 (1988).

The above-quoted language from *Catrett* also casts doubt upon the second ground for the holding in *Hayden Publishing*. Under *Catrett*, counterplaintiffs' failure of proof concerning the relevant market definition "necessarily renders all other facts immaterial," *id.*, 477 U.S. at 323, 106 S.Ct. at 2553, so that the court need not decide whether counterdefendant's market definition is correct, or whether counterdefendants possessed market power under that definition.