**ENERGEX LIGHTING INDUSTRIES, INC., Plaintiff,**

v.

**NORTH AMERICAN PHILIPS LIGHTING CORPORATION, North American Philips Corporation and Guaranteed Service Division Lighting Products Co. Division, Defendants.**

No. 83 Civ. 3929 (SWK).

United States District Court, S.D. New York.

March 12, 1987.

Feinberg & Herman, New York City by Stephen J. Feinberg, for plaintiff.

Covington & Burling, Washington, D.C. by John Vanderstar, Lyle Jeffrey Pash, Rogers, Hoge & Hills, New York City by

Lile H. Deinard, William R. Golden, Jr., for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an action brought under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2; Section 4 of the Clayton Act, 15 U.S.C. § 15; Section 1 of the Robinson-Patman Price Discrimination Act, 15 U.S.C. § 13(a); 28 U.S.C. § 1337, and common law principles of fraud and breach of contract. Plaintiff alleges monopolization, price discrimination and predatory pricing under the federal antitrust laws as well as fraud and breach of contract under its pendent state claims. Plaintiff seeks injunctive and treble damage relief on its federal claims and single damage recovery on its pendent state claims. The case presently is before the Court on defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure as to Counts One, Two and Three of the complaint, the federal antitrust claims. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

The following facts are not in dispute. Plaintiff Energex Lighting Industries, Inc. ("Energex") is a New Jersey corporation which manufactured and distributed various lighting products. Energex became insolvent and went out of business in 1980.

Defendants are North American Philips Corporation ("NAPC"), a Delaware Corporation, North American Philips Lighting Corporation ("NAPLC"), a Delaware corporation and wholly-owned subsidiary of NAPC, and Guaranteed Service Lighting Products Company ("GSLPC"), formerly an unincorporated sales division of NAPLC.[1] In a recent corporate reorganization, GSLPC was dissolved and its sales functions transferred to the Radiant Lamp

---

1. Plaintiff previously discontinued this matter as to a fourth defendant, N.V. Philips' Gloeilam- penfabrieken, a corporation organized under the laws of The Netherlands.

Company, a wholly-owned subsidiary of NAPLC.

During the relevant time period, both plaintiff and defendants, particularly NAPLC, manufactured and distributed long-life lamps, i.e., light bulbs, for the Guaranteed Lamp Market Segment (the "GLM Segment"), which is a separate and distinct light bulb market. The end users of the product sold in the GLM Segment are designed to be long-life bulbs having a more durable mount construction and other properties designed to provide 3,500 to 10,-000 hours of service, a substantially longer expected life than most lamps sold in retail outlets. All incandescent and fluorescent products are sold to the end users in the GLM Segment on a guaranteed service, free replacement basis. Lamps are sold to the end users in the GLM Segment by direct commission salesmen, or on a direct customer call basis.

The GLM Segment market is maintained at two levels, sales by manufacturers to GLM Segment distributors and sales by GLM Segment distributors to the industrial, commercial and institutional users. Certain manufacturers manufacture only incandescent lamps and, in turn, purchase fluorescent lamps from other manufacturers for resale to GLM Segment distributors. Such incandescent lamp manufacturers must be able to offer fluorescents to their GLM Segment distributor-customers in order to be able to compete with those manufacturers, such as defendants, who produce both incandescents and fluorescents. Otherwise GLM Segment distributor-customers would be inconvenienced by having to deal with two GLM Segment manufacturers and would not be able to take advantage of additional discounts resulting from higher volume purchases.

During the relevant time period, Energex's total sales were roughly evenly split between incandescent and fluorescent products. Energex manufactured none of the fluorescent lamps it sold; it did manufacture most of the incandescent lamps it sold. Energex purchased more than 50 percent of the lamps it sold from NAPLC, of which approximately 85 percent were fluorescent

lamps and 15 percent were incandescent lamps.

Sales by manufacturers to GLM Segment distributors are estimated at approximately $35,000,000 per year. NAPLC's sales to Energex at one time totalled $1,000,000 per year. During the relevant time period, NAPLC had a market share of approximately 25 percent. At nearly the time Energex went out of business in 1980, NAPLC acquired the Solar Electric Division of Dutch Boy Paints, and, in 1982, NAPLC acquired the lamp division of Westinghouse. Partly as a result of these acquisitions, NAPLC increased its market share of the products sold by the GLM Segment distributors to approximately 55 percent.

For several years prior to 1976, Energex was owned by Salvatore M. Caravetta. In 1976, Caravetta sold Energex to Maintenance Engineering for approximately $600,-000. During the succeeding years, Maintenance Engineering was unable to make its scheduled payments to Caravetta. In addition, Energex came to be substantially in debt to NAPLC for products it had purchased from that company. Following negotiations in September and October 1979 with both Maintenance Engineering and NAPLC, Caravetta agreed to resume control and again become the principal owner of Energex. During these negotiations, NAPLC, in return for certain security interests, agreed to forgive a portion of the debt owed it by Energex, to extend Energex a "manufacturer's discount" of 65 percent on its purchases of fluorescent lamps, and to extend additional credit to Energex on purchases it would make from NAPLC. Nonetheless, Energex became insolvent and went out of business in 1980.

Energex claims that, despite the representations made with respect to GSLP's pricing policies, defendants, during the end of 1979 and the early part of 1980, engaged in discriminatory pricing practices by modifying published price lists to offer more substantial discounts to GLM Segment distributors without commensurate increase in discounts to manufacturers such as Energex, offered special contract terms and spe-

cial discounts which were substantially greater than that indicated on published price lists to certain of Energex's customers, and generally continued the discriminatory practices GSLPC had engaged in before Caravetta reassumed control of Energex. Energex asserts that such practices resulted in Energex's losing important customers to defendants, becoming insolvent and going out of business. Energex initiated this action in May 1983 claiming that such practices constituted price discrimination of the sort which is prohibited by Section 1 of the Robinson-Patman Act, predatory pricing practices in violation of Section 2 of the Sherman Act, and monopolization, attempt to monopolize, and conspiracy to monopolize in violation of Sections 1 and 2 of the Sherman Act.

## DISCUSSION

The standards to be applied by a district court in deciding a motion for summary judgment have been clearly articulated in this Circuit. It is axiomatic that a motion for summary judgment lies only when there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). In considering the motion, this Court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party. *Knight v. United States Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then has the burden of coming forward with "special facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), and must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Summary judgment procedures, however, should be used sparingly in complex antitrust litigation where motive and intent play leading roles. *Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.*, 730 F.2d 64, 67–68 (2d Cir.1984).

*Count One*

Count One of the complaint alleges illegal price discrimination under Section 1 of the Robinson-Patman Act. Specifically, Count One provides

13. Upon information and belief, shortly after control of Energex was transferred and new funds were made available to Energex to enable it to carry on its operations, NAPLC modified its published price lists to offer more substantial discounts to GLM segment Distributors without commensurate increase in the discounts to manufacturers. In addition, contrary to its agreement with plaintiff that it would permit it to purchase lamps for resale at a profit and, with the intent to destroy plaintiff's business, in or about 1979, defendant NAPLC, through its sales company, defendant GSLP, began supplying fluorescent and incandescent lamps at special discounts substantially greater than that indicated on its published price list to certain of plaintiff's customers. Defendant NAPLC also offered special contract terms to certain customers and/or selectively failed to enforce certain published contract terms and conditions.

14. Upon information and belief, these special discounts, payment terms and other contract deviations were offered to certain of plaintiff's customers without justification based upon cost savings which NAPLC might attain as a result of the quantities being ordered. Selected customers were offered special prices by NAPLC on all purchases, regardless of the standard industry practice of giving

published discounts off list prices based on the quantity ordered.

15. Upon information and belief, defendants knew that it was impossible, given plaintiff's handling, warehouse, and labor costs, for plaintiff to match defendant's price to such customers unless plaintiff incurred substantial losses.

16. Upon information and belief, defendant sold to certain of plaintiff's customers at an unreasonably low price with the purpose and intent to eliminate plaintiff as a competitor. Defendant's unfair method of competition violated the Robinson Patman Act, 15 U.S.C. Section 13(a).

17. If NAPLC had not deviated from its published price lists and announced sales policies in dealings with certain customers, plaintiff would have enjoyed a substantial and profitable incandescent and fluorescent lamp business. Upon information and belief, but for the matters alleged in this complaint, such business would have continued.

18. As a result of defendants' actions, plaintiff was unable to sell either the fluorescent lamps purchased from defendant or incandescent lamps it manufactured itself.

19. As a result of defendants' price discrimination, plaintiff has suffered irreparable damage and a complete loss of its business. It has sustained damages in the sum of $3,000,000, and is entitled under 15 U.S.C. Section 15 to recover such damages threefold.

Complaint at ¶¶ 13–19.

Defendants move for summary judgment on Count One on the grounds that (1) the complaint does not allege price discrimination under Section 1 of the Robinson-Patman Act, 15 U.S.C. § 13(a), but rather alleges a violation under Section 3 of that Act, 15 U.S.C. § 13a, for which no private right of action exists, and (2) even if the claim were under Section 1, plaintiff has failed to allege or has demonstrated by its testimony that it cannot prove certain essential elements of the claim, including price discrimination, injury to itself or to competition, and discriminatory sales of goods of like grade or quality.

■ Section 1 of the Robinson Patman Act provides

(a) *Price; selection of customers.* It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them....

15 U.S.C. § 13(a). Three elements are necessary to state a claim for an actionable violation of the Robinson-Patman Act. Plaintiff must complain that (1) the alleged price discrimination meets the "in commerce" requirement, i.e., that "either or any" of the purchases involved are in commerce; (2) there has been discrimination in price between different purchasers of products of like grade and quality; and (3) the effect of the discrimination "may be substantially to lessen competition or tend to create a monopoly." *See Hoyt Heater Co. of Northern California v. American Appliance Mfg. Co.*, 502 F.Supp. 1383, 1386–87 (N.D.Calif.1980).

■ Plaintiff fails to meet the second element. Defendants sold their products to other manufacturers at lower published prices than they sold to GLM Segment distributors. Plaintiff claims that defendants deviated from their published price lists to offer more substantial discounts to distributors, who were plaintiff's customers, without offering a commensurate in-

crease in discounts to other manufacturers such as plaintiff. The Supreme Court, however, has held that the Robinson-Patman Act reaches discrimination between customers who compete at the same functional level. *L.S. Amster & Co., Inc. v. McNeil Laboratories, Inc.*, 504 F.Supp. 617, 626 (S.D.N.Y.1980) (citing *FTC v. Fred Meyer, Inc.*, 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968)). The lesson of *Meyer* is that defendants are required to treat equally with plaintiff only other manufacturers who buy from defendants. Since the GLM Segment distributors who allegedly were offered more favorable terms are not manufacturers, even if defendants' terms treated distributors more favorably than manufacturers, it would not be actionable. *Id.*

Although plaintiff may be able to state a claim for sale of "goods at unreasonably low prices for the purposes of destroying competition or eliminating a competitor" under Section 3 of the Robinson-Patman Act, 15 U.S.C. § 13a, there is no private right of action under that section. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958). Accordingly, defendants are entitled to summary judgment in their favor on the claim alleged in Count One of the complaint that defendants' pricing policies discriminated against plaintiff.

*Count Two and the "Conspiracy to Monopolize Claim of Count Three"*

Plaintiff has sued NAPC—which is a parent company—its wholly owned subsidiary, and an unincorporated sales division of that subsidiary for, *inter alia*, conspiracy to restrain trade and to monopolize, which is prohibited by Section 1 of the Sherman Act. In *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984), the Supreme Court held that separately incorporated units within a single firm cannot conspire for the purposes of Section 1 of the Sherman Act. Plaintiff acknowledges that the *Copperweld* opinion is dispositive on this issue and has voluntarily withdrawn Count Two and

its conspiracy to monopolize claim under Count Three of its complaint.

*Count Three*

The remaining portions of Count Three allege that defendants, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, have monopolized and attempted to monopolize the sale of long life lamps shipped in interstate commerce to the GLM Segment market by engaging in predatory pricing.

Defendants move for summary judgment on Count Three on the grounds that (1) defendants had only a 25 percent market share during the relevant time period, which is too small to constitute a monopoly; (2) the attempt to monopolize claim is deficient because it fails to allege a dangerous probability that the attempt might succeed; and (3) to prove a predatory pricing claim, Energex must—and cannot—show that defendants sold lamp products at below average variable costs, which is the standard espoused by the Second Circuit.

A. *Monopolization*

Section 2 of the Sherman Act provides

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars, or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2.

In order to state a valid claim for monopolization under Section 2, plaintiff must allege as a threshold requirement that the defendant enjoys monopoly power in the relevant market. *Consolidated Terminal Systems v. ITT World Communications*, 535 F.Supp. 225, 228 (S.D.N.Y.1982) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966)). This plaintiff has done. To prevail on a monopolization

claim, plaintiff must establish the possession of monopoly power and the willful acquisition or maintenance of that power. *United States v. Grinnell Corp.*, 384 U.S. at 570–71, 86 S.Ct. at 1703–04. A party has monopoly power if it has the "power of controlling prices or unreasonably restricting competition." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 389, 76 S.Ct. 994, 1003, 100 L.Ed. 1264 (1956). In determining whether monopoly power exists, a court must consider the strength of the competition, the probable development of the industry, consumer demand, and the percentage of market share. *Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.*, 730 F.2d 64, 68–69 (2d Cir.1984). Since defendants moved for summary judgment, they had the burden of demonstrating that there was no factual support for the allegation that defendants had monopoly power. *Id.* at 69.

■ Defendants, however, rest their argument solely on the Second Circuit's holding in *United States v. Aluminum Company of America ("Alcoha")*, 148 F.2d 416, 424 (2d Cir.1945), that, in the relevant aluminum ingot market, over ninety percent market share was "enough to constitute a monopoly; [but] it is doubtful whether sixty or sixty-four percent would be enough; and certainly thirty three per cent is not." Defendants have failed to address the other factors which the Second Circuit has cautioned should be analyzed in an allegation of monopoly power. This is particularly important in light of the fact that the long life lamp market bears no relationship whatsoever to *Alcoa*'s aluminum ingot market and consequently that the market share percentage necessary for a monopoly in the long life lamp market may not parallel that of the aluminum ingot market. The Second Circuit has acknowledged that "a party may have monopoly power in a particular market, even though its market share is less that 50%." *Hayden Publishing Co., Inc. v. Cox Broadcasting Corp.*, 730 F.2d at 69 n. 7 (citation omitted).

There in fact is some factual support in this record for an allegation of monopoly power. Plaintiff asserts that the number of independent incandescent lamp manufacturers exclusive of NAPLC has declined from eleven to four. If NAPLC's pricing practices resulted in the demise of other independent lamp manufacturers such as Energex, then defendants may be said to have the power to control prices and to unreasonably restrain competition, i.e., monopoly power. And, if defendants' acts in acquiring or maintaining that power were willful, then it follows that a 25 percent market share in this particular market may be sufficient for an assertion of monopoly power.

Accordingly, defendants have failed to meet their burden of demonstrating that there is no factual support for the allegation that defendants had monopoly power. This Court does not conclude that defendants did have monopoly power, only that, on this record, summary judgment is inappropriate and Energex is entitled to attempt to prove that they did.

### B. *Attempt to Monopolize*

■ In order to state a valid claim under Section 2 for attempted monopolization, plaintiff must allege (1) a dangerous probability of success in monopolizing a given product market and (2) a specific intent to destroy competition or control prices in the relevant market. *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 840 (2d Cir.1980); *Consolidated Terminal Systems v. ITT World Communications*, 535 F.Supp. at 228. Defendants assert that plaintiff's attempt to monopolize claim is deficient because it fails to allege a dangerous probability of success. The Court finds this assertion to be meritless in view of the fact that plaintiff also asserts monopolization. Where, as here, plaintiff asserts a monopolization claim, plaintiff asserts that defendants have already succeeded in monopolizing a given product market. Where one alleges that success has already been achieved, it is inherent that he is also alleging a dangerous probability of success.

## C. *Predatory Pricing Practices*

■ Plaintiff alleges that defendants attempted to monopolize by engaging in predatory pricing practices in that, with intent to destroy competition, defendants modified published price lists to offer more substantial discounts to GLM Segment distributors, who were plaintiff's customers, without a commensurate increase in discounts to manufacturers such as plaintiff and that this destroyed plaintiff's ability to compete. Defendants move for summary judgment on the ground that defendants did not sell lamp products at below average variable costs, which is the standard for a determination of predatory pricing.

Predatory business conduct has been defined as conduct which has the purpose and effect of advancing the actor's competitive position, not by improving the actor's market performance, but by threatening to injure or injuring actual or potential competitors, so as to drive or keep them out of the market, or force them to compete less effectively. L. Sullivan, *Antitrust* 108 (1977). Traditionally, in attempting to determine whether pricing practices by a defendant were predatory, the courts conducted a rule of reason analysis; but this general approach failed to provide a clearcut standard. T. Vakerics, *Antitrust Basics* § 5.06[2] (1985). In 1975, Areeda and Turner proposed a strict, cost-based rule for predatory pricing where, with certain exceptions, prices at or above average variable costs should be *per se* legal and prices below average variable costs should be *per se* illegal. *See* Areeda and Turner, *Predatory Pricing and Related Practices Under Section 2 of the Sherman Act*, 88 Harv.L. Rev. 697 (1975). The Second Circuit has indicated that, as a general rule, the relationship between prices and average variable cost are the best single determinant of predatory pricing and that, in general, prices below average variable cost will be presumed predatory, while prices above average variable cost will not. *Northeastern Telephone Company v. American Telephone and Telegraph Company*, 651 F.2d 76, 88 (2d Cir.1981) (holding that that case was not a run of the mill case because defendant offered more than one product

and was regulated and that as a result the Areeda-Turner presumptions did not apply).

The Court finds the instant case also is not a run of the mill case. Defendant-manufacturers had the ability to sell lamp products both to other manufacturers *and* to the distributors to whom the other manufacturers also sold; and defendants in fact did sell lamp products to both groups but did so at different price scales. This gave defendants the ability to regulate one price scale to the alleged detriment of the other group of purchasers. Similar practices have been held to be predatory in this Circuit. *See Alcoa*, 148 F.2d at 436–38 (holding as predatory practices sales by a vertically integrated firm at an excessively high price so that buyers who competed with its own operations at the next vertical level would not be able to do so efficiently).

■ As a result, the Court finds that the Areeda-Turner presumptions should not apply to this case. Defendants have offered no other proof and therefore have failed to demonstrate that there is no factual support for the allegation of attempted monopolization by predatory pricing practices. Accordingly, the Court finds that summary judgment is inappropriate as to this issue.

## CONCLUSIONS

Defendants' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is granted as to Counts One and Two of the complaint and denied as to Count Three. The parties should move expeditiously to complete discovery as the Court intends to set an early discovery cut-off date at the next conference.

SO ORDERED.