**M. LEFF RADIO PARTS, INC., a Corporation, Plaintiff,**

v.

**MATTEL, INC., a corporation; and John Doe # 1 Through John Doe # 10, Individuals and/or Corporations, Defendants.**

**Civ. A. No. 84–2084.**

United States District Court,
W.D. Pennsylvania.

Dec. 8, 1988.

---

Kevin P. Lucuas, James P. Hollihan, Manion Alder & Cohen, P.C., Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, Roger C. Wiegand and Gail M. Foote, Pittsburgh, Pa., for Mattel, Inc.

## MEMORANDUM ORDER

BLOCH, District Judge.

Plaintiff's complaint was referred to United States Magistrate Gary L. Lancaster in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and Rules 3 and 4 of the Local Rules for Magistrates.

On November 8, 1988, the Magistrate filed his Report and Recommendation, which concluded that Defendant's motion for partial summary judgment should be granted. Objections to the Magistrate's Report and Recommendation were filed by Plaintiff on November 22, 1988. After *de novo* review of the pleadings and documents in the case, together with the Report and Recommendation and objections thereto, the following order is entered this 8th day of December, 1988:

IT IS HEREBY ORDERED that Defendant's motion for partial summary judgment is granted.

The Report and Recommendation filed by Magistrate Lancaster is adopted as the Opinion of the Court.

## MAGISTRATE'S REPORT AND RECOMMENDATION

GARY L. LANCASTER, United States Magistrate.

Plaintiff, M. Leff Radio Parts, Inc. ("Leff"), filed this civil action against Mattel, Inc. and ten John Doe Defendants ("Mattel"). Plaintiff's five count complaint alleges: 1) breach of contract; 2) wrongful interference with contractual relations; 3) fraud, misrepresentation and deceit; 4) mistake; and 5) violations of federal antitrust laws. Plaintiff seeks damages in excess of $10,000.00 and certain equitable relief. Mattel has moved for partial sum-

mary judgment and, for the reasons set forth below, the motion should be granted.

## I. *Background*

Leff is a Pennsylvania corporation with its principal place of business in Braddock, Pennsylvania. Leff's primary business is the distribution of electronic parts and equipment. Mattel, a manufacturer of children's toys, is a Delaware corporation with its principal place of business in California.

In the late 1970's, Mattel entered what was then the booming consumer market in home video games. Video games are comprised of two components: a console which is attached to a television and serves as the computer; and interchangeable cartridges which house the programs for the individual games. Mattel's console-cartridge system was introduced under the name of "Intellivision." Mattel sold Intellivision either directly to retailers, or to distributors who resold the games to retailers. One such distributor was Plaintiff, who began selling Intellivision in 1980.

Beginning in late 1982, the high consumer demand for home video games declined precipitously. The turndown in consumer demand was universal; all companies engaged in the manufacture and distribution of home video games suffered immediate and drastic losses. Mattel attempted to minimize its losses by, among other things, making substantial layoffs in the workforce; replacing the upper-level management of the Intellivision division; and overall scaling back on its operations. However, after the first three fiscal quarters of 1983—from February 1983 to October 1983—Mattel's losses had already totalled $283,527,000.00. Consequently, Mattel's Board of Directors determined that the Intellivision division was unsalvageable [1] and, in February of 1984, Mattel sold the Intellivision division and got out of the home video game business.

Although Plaintiff's multiple legal claims are discussed in detail *infra*, broadly stated, Plaintiff contends that during the relevant period, Mattel's authorized agents

---

**1.** When this decision was actually reached is discussed in detail, *infra*.

misrepresented to Plaintiff that, despite its recent losses, Mattel intended to remain in the home video game market. Consequently, Plaintiff continued to buy Intellivision products in the belief that Mattel would continue to support those products with research, development, and advertising. However, when Mattel sold the business, it also stopped providing support services. Consequently, Plaintiff's inventory became unsalable.

Further, in excess of 90% of Plaintiff's sales of Intellivision products were to the G.C. Murphy Company. From the inception of their relationship, G.C. Murphy and Plaintiff agreed that all sales to G.C. Murphy would be on a "sale or return," basis, i.e. G.C. Murphy could return any unsold Intellivision product to Plaintiff for credit. Pursuant to the arrangement, after Mattel sold its Intellivision division, G.C. Murphy returned approximately $240,000.00 worth of unsold Intellivision products to Plaintiff. Plaintiff contends that it had a parallel oral agreement with Mattel that any products returned by G.C. Murphy to Plaintiff could, in turn, be returned by Plaintiff to Mattel. Mattel now refuses to honor the oral agreement.

Plaintiff seeks both to return the unsold products in its inventory for credit against its outstanding balance owed to Mattel,[2] and damages caused by Mattel's alleged misrepresentations.

## II. *Standard of Review*

■ Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). A "material fact" is one whose resolution will affect the ultimate determination of the case. *R.C. Bigelow, Inc. v. Unilever N.V.*, 689 F.Supp. 76 (D.Conn.1988). A genuine dispute about a material fact arises when "the evidence is such that a reasonable jury could return a verdict for that party." *Anderson v. Lib-*

*erty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Contrary to the traditional view that summary judgment is a disfavored proceeding, to be used sparingly, the Supreme Court has now made clear that Rule 56(c) was designed to facilitate, not inhibit, the granting of summary judgment. *See Anderson*, 477 U.S. 242, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Nevertheless,

> [i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.

*Titan Sports, Inc. v. Comics World Corp.*, 690 F.Supp. 1315, 1318 (S.D.N.Y.1988) (citing authorities).

■ To demonstrate entitlement to summary judgment, the Defendant, as the moving party, is not required to refute the essential elements of the Plaintiff's cause of action. The Defendant need only point out the absence or insufficiency of the Plaintiff's evidence offered in support of those essential elements. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Houser v. Fox Theatres Management Corp.*, 845 F.2d 1225, 1229 (3d Cir.1988). Once that burden has been met, the Plaintiff must identify affirmative evidence *of record* which supports each essential element of his cause of action. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

■ Factual specificity is required of one who opposes a motion for summary judgment because summary judgment is designed to go beyond the pleadings to assess whether a genuine issue of material fact exists and whether a trial is necessary. *Celotex*, 477 U.S. 317, 106 S.Ct. 2548.

---

**2.** Leff's outstanding balance owed to Mattel is the subject of Mattel's countersuit. However,

the countersuit is not implicated by this motion.

Therefore, in order to defeat a properly supported motion for summary judgment, a Plaintiff can not merely restate the allegations of his complaint, *Farmer v. Carlson*, 685 F.Supp. 1335 (M.D.Pa.1988), nor can he rely on self-serving conclusions unsupported by specific facts in the record. Plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. If the Plaintiff fails to provide such evidence, then he is not entitled to a trial and Defendant is entitled to summary judgment as a matter of law.

Thus, the mere existence of some alleged factual dispute between the parties will not defeat a motion for summary judgment. *See Graham v. Collier*, 688 F.Supp. 146, 147 (D.Del.1988). Rather, where the party with the burden of proof fails to demonstrate the existence of an element essential to his case, "there can be 'no genuine issue as to any material fact,' given a complete failure of proof concerning an essential element of the non-moving party's case, necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2553.

With these concepts in mind, we turn to the merits of Defendant's motion.

## III. *Discussion*
### *Count I—Breach of Contract*
### A. *Sale or Return*

Plaintiff contends that Mattel breached an oral agreement that any unsold products returned by G.C. Murphy to Plaintiff could, in turn, be returned by Plaintiff to Mattel. Mattel has moved for summary judgment on the basis that "sale or return" agreements are subject to the statute of frauds as incorporated in the Uniform Commercial Code—Sales ("U.C.C."), 13 Pa.C.S.A. §§ 2101–2725, and, thus, "not enforceable ... unless there is some writing sufficient to indicate that a contract for sale had been made between the parties." *Id.* § 2201(a).

The operable section of the U.C.C. is Section 2326, which provides:

§ 2326. **Sale on approval and sale or return; consignment sales and rights of creditors**

(a) **Definitions.**—Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is:

. . . . .

(2) a "sale or return" if the goods are delivered primarily for resale.

. . . . .

(d) **Treatment of "or return" term.—** Any "or return" term of a contract for sale is to be treated as a separate contract for sale within the statute of frauds section of this division (section 2201) and as contradicting the sale aspect of the contract within the provisions of this division on parol or extrinsic evidence (section 2202).

13 Pa.C.S.A. § 2326.

Plaintiff does not contend that there is a writing evidencing the alleged agreement; Plaintiff contends that the statute of frauds is inapplicable to the instant arrangement on several other grounds. Initially, according to Plaintiff, his arrangement with Mattel is not a "sale or return" agreement. According to Plaintiff, a "sale or return" agreement is only applicable if the buyer fails to resell the goods. Here, Plaintiff did resell the goods to G.C. Murphy. Only if G.C. Murphy returned the goods to Plaintiff did Mattel have the obligation to buy back the goods. Thus, according to Plaintiff, his agreement with Mattel was a "buy back" arrangement not a "sale or return." Plaintiff's distinction between a "sale or return" and a "buy back" is apparently clearer to Plaintiff than the facts would allow.

■ The substance of the alleged oral agreement is that Plaintiff has the right to return conforming, i.e. nondefective Intellivision games to Mattel that Plaintiff was unable to resale to G.C. Murphy. Plaintiff's attempt to draw a distinction between goods not resold *ab initio* and those simply returned by G.C. Murphy, is insupportable. The fact remains that Leff has *not* resold

the goods, they remain in his inventory, and he claims the right to return them to Mattel. This is a "sale or return" agreement and within the statute of frauds. Plaintiff has cited no authority in support of his argument and we have found none.

■ Plaintiff next contends that summary judgment is improper because the statute of frauds operates only where written agreements are involved. According to Plaintiff, its dealings with Mattel did not involve written agreements but "order forms." A review of several samples of the order forms [3] evidence an agreement between Plaintiff and Mattel for the purchase of Intellivision products sufficient to constitute a "writing" within the meaning of the U.C.C.

Plaintiff next argues that oral "sale or return" agreements are enforceable despite the statute of frauds. Plaintiff relies on *Central Jersey Dodge Truck Center, Inc. v. Sightseer Corp.*, 608 F.2d 1106 (6th Cir. 1979). There the court determined that a "sale or return" agreement was not barred by the statute of frauds even though it was not in writing because "the parties have admitted in word and deed their intention that [Defendant] would buy back the [goods] which [Plaintiff] found itself unable to sell." *Id.* at 1114. This is not a novel finding. It is well settled that oral agreements may be taken out of the statute of frauds if there is evidence to establish that the agreement was made. *Brunswick Box Co. v. Coutinho, Caro & Co.*, 617 F.2d 355 (4th Cir.1980).

■ The purpose of the statute of frauds is to prevent perjury, not to allow parties to escape their legal obligations; therefore, oral contracts, ordinarily barred by the statute of frauds, will be enforced: 1) if the defendant admits making the contract either in his pleadings or in his testimony, *Zlotziver v. Zlotziver*, 355 Pa. 299, 49 A.2d 779 (1946); or 2) if there has been performance or part performance on the

part of the defendant, *Klingensmith v. Klingensmith*, 375 Pa. 178, 100 A.2d 76 (1953); or 3) if proof of the agreement is otherwise established by the "acts and declarations of the parties, either together or separately." *Kurland v. Stolker*, 516 Pa. 587, 533 A.2d 1370, 1373 (1987). However, Plaintiff has presented no evidence to establish any of these exceptions. Plaintiff's only evidence that the oral agreement exists is Mr. Leff's representation that it does. Such an unsupported representation is insufficient to take the matter out of the statute of frauds and "[t]o hold otherwise is tantamount to setting aside the statute of frauds." *Id.* 533 A.2d at 1375.

Finally, Plaintiff contends that summary judgment is improper because Mattel does not deny that the oral agreement was made; however, Mattel need not deny. It need only demonstrate the absence of proof presented by the Plaintiff in support of it. *Celotex*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553.

We have carefully considered all of Plaintiff's arguments to avoid the statute of frauds, including those not specifically discussed, and find no merit in any of them. Because Plaintiff has failed to show either a writing or other evidence that the oral agreement exists, he has failed to demonstrate a genuine issue on an element that he will have to demonstrate at trial and, thus, he is not entitled to a trial on this claim and summary judgment is warranted.[4]

B. *Implied Warranty of Merchantability*

Plaintiff also claims a cause of action based on a breach of the implied warranty of merchantability. Section § 2–314(1) of the U.C.C. provides in part:

§ 2314 **Implied Warranty, merchantability; usage of trade**

(a) Unless excluded or modified (Section 2–316), a warranty that the goods

---

**3.** Mattel Exhibits 32, 33, 35, 37–40.

**4.** Plaintiff also alleged that Defendant waived this defense by failing to include it in the answer. A review of the pleadings of record indicates that Defendant, with the written consent of Plaintiff's counsel, filed an amended answer on November 15, 1984, in which the statute of fraud was raised as a defense.

shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

13 Pa.C.S.A. § 2314.

 To recover for breach of the implied warranty of merchantability, Plaintiff must show both that the seller was a "merchant" and that the goods were not "merchantable" at the time of the sale. That Mattel is a merchant is not in dispute in this case. Whether the instant goods are "merchantable" is in dispute.

Plaintiff's merchantability theory is that it purchased Intellivision products from Mattel for resale; but it did so with the understanding that Mattel would continue to provide advertising and promotional support in order to create and maintain consumer demand for the games. Once Mattel abandoned the video game business, it stopped providing the support services. Without that support, there was no consumer demand for Intellivision products; and, thus, according to Plaintiff, the Intellivision products were no longer "merchantable." Plaintiff's definition of merchantability is, to say the least, expansive.

 Whether goods are merchantable within the meaning of the U.C.C. is not a function of whether there is a consumer demand for the product, unless that diminished consumer demand is a result of a defect in the product. In other words, there is no breach of implied warranty of merchantability where the product was not "defectively manufactured or any way substandard in construction and performance." *Lesnefsky v. Fischer & Porter Co.*, 527 F.Supp. 951, 957 (E.D.Pa.1981); *Wright v. Federal Machine Co., Inc.*, 535 F.Supp. 645, 650 (E.D.Pa.1982); *Sessa v. Riegle*, 427 F.Supp. 760, 769 (E.D.Pa.1977), *aff'd* 568 F.2d 770 (3d Cir.1978). Even the authorities cited by Plaintiff in support of his theory of "merchantability" have as a common theme that the products in question contained some inherent defect. *Jackson v. Cushing Coca–Cola Bottling Co.*, 445 P.2d 797 (Okla.1968) (foreign substances in a bottle of Coca–Cola); *McAfee v. City of Garnett*, 205 Kan. 269, 469 P.2d 295 (1970) (natural gas had inappropriate odor); *Regina Grape Products Co. v. Supreme Wine Co.*, 357 Mass. 631, 260 N.E.2d 219 (1970) (wine was watery, light in body and color, and not uniform in color, or quality and would find no buyer, therefore, not merchantable). Although Plaintiff's theory of recovery is couched in the appropriate terms, it rises no higher than one alleging that without adequate advertising and promotion, he could not sell the Intellivision products at a profit. That may be true, however, that does not state a cause of action for breach of the implied warranty of merchantability under the U.C.C. Because Plaintiff has failed to demonstrate a genuine issue of fact that the goods were defective, summary judgment on this claim should be granted.[5]

### C. Implied Warranty of Fitness for a Particular Purpose

Plaintiff also claims damages for an alleged breach of the implied warranty of fitness for a particular purpose. That warranty is created if the seller, at the time of contracting, has reason to know:

(1) any particular purpose for which the goods are required; and

(2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods;

13 Pa.C.S.A. § 2315. Plaintiff again contends that Mattel's discontinuance of advertising and promotional support rendered the Intellivision products unfit for their "particular" purpose, i.e., resale. However, Plaintiff again misconstrues the underlying purpose of the section.

 A lack of consumer demand for the product, regardless of whether that lack of consumer demand is a result of natural market forces, a lack of adequate marketing technique, advertising, or promotional tools, does not render the product

---

5. Plaintiff does allege that approximately $4,606.00 worth of products were defective. To that extent, summary judgment is inappropriate and Defendant has not moved for summary judgment on this basis.

itself unfit for resale. The Intellivision products in Mr. Leff's inventory were certainly fit for resale and, should a buyer have come along, he undoubtedly would have resold them. Thus, if we allow that resale is a "particular purpose"—a proposition which is by no means established in law—the fact that there is not a consumer demand for Intellivision products does not render them unfit for that purpose under the U.C.C. Plaintiff has failed to direct us to authorities in support of this theory, nor have we discovered any.

### D. *Express Agreement*

■■■ Plaintiff also asserts breach of an express agreement. Plaintiff avers that Mattel's representations that it was committed to the video game business created a contractual obligation in Mattel to continue promotional and advertising support of Mattel products remaining in Leff's inventory after Mattel went out of business.

The elements of an express agreement must be established in more definiteness than is presented here. They must be presented with such specificity that the rights and responsibilities of the parties can be determined. Furthermore, "[u]nder Pennsylvania law, the test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 299 (3d Cir.1986). There is no writing evidencing this contractual obligation, nor has Plaintiff provided any information with respect to the levels of support in dollar amounts or any other information setting forth what was expected of Mattel. A contract which has absolutely no specifics defining the rights and responsibilities of the parties is not a contract at all and, thus, not enforceable. *Grace Retail*, 795 F.2d at 291. Because Plaintiff has failed to produce evidence that any specifics had been agreed upon, summary judgment is appropriate on this count and should be granted.

**6.** Leff Deposition p. 132–135.

### *Count II—Wrongful Interference With Contractual Relations*

As the factual predicate for this claim, Plaintiff directs our attention to the deposition of Mr. Leff.[6] Mr. Leff testified, in substance, that after Mattel sold Intellivision, Plaintiff's customers, Voss T.V. and D & C Appliance, were unable to sell the Intellivision games remaining in their inventory. As a result, they either returned the products to Plaintiff for credit or simply refused to pay for the games. Plaintiff did not have "sell or return" agreements with these other customers; accordingly, Plaintiff disputed their right to return the goods. As a result, Plaintiff no longer does business with these customers and seeks to hold Mattel liable on the theory of tortious interference with contractual relations.

■■■ Pennsylvania courts recognize the tort of intentional interference with contractual relations as set forth in the Restatement (Second) of Torts § 766B. *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895 (1971). The elements of the cause of action are: 1) a prospective contractual relationship; 2) the purpose or intent to harm the Plaintiff by preventing the relationship from occurring; 3) the absence of privilege or justification on the part of the Defendant; and 4) the occurrence of actual harm or damage to the Plaintiff as a result of the Defendant's conduct. *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964); *Kennametal, Inc. v. Subterranean Equipment Co.*, 543 F.Supp. 437, 439 (W.D.Pa.1982); *Koppers Co. v. Krupp-Koppers GmbH*, 517 F.Supp. 836 (W.D.Pa. 1981).

■■■ Plaintiff's theory of recovery can not be sustained. Plaintiff has failed to produce any evidence that presents a genuine issue that Mattel's purpose in selling its Intellivision division was to harm Plaintiff in his relations with its customers, current or prospective. Nor has Plaintiff directed us to any facts in the record to create a genuine issue that Mattel knew that the interference was certain or substantially

certain to occur as a result of selling its Intellivision division. *Glazer v. Chandler*, 414 Pa. at 304, 200 A.2d 416. Plaintiff's loss of these customers is the result of their failure to pay for the Intellivision products in their inventory, versus Plaintiff's refusal to forgive the debt. That Mattel's conduct is a predicate to the events which caused the dispute is insufficient to support a cause of action for tortious interference with contractual relations.

Additionally, in order to recover, Plaintiff must demonstrate that Mattel was not justified in selling its Intellivision division. *Kennametal*, 543 F.Supp. 437. It is untenable that a reasonable jury could determine that Mattel was not justified in selling a business which was losing in excess of $283,000,000.00 per year, with no turnaround in sight.

Because Plaintiff's evidence has failed to demonstrate a genuine issue of fact as to the essential elements of the cause of action, summary judgment in favor of Defendant is warranted on this count.

### Count III—Fraud, Misrepresentation and Deceit

■ Plaintiff also seeks recovery on the basis of misrepresentation. Plaintiff claims that in September and November 1983, Mattel representatives sent out correspondence to its Intellivision customers, including Plaintiff, that contained the statement: "The rumors regarding Mattel's intention to abandon the video game business are false."[7] Plaintiff contends that these statements were false, and Mattel knew or should have known that they were false. Nevertheless, the representations caused Leff to reasonably form a belief that Mattel was going to remain in the video game business and, as a result, Leff continued to buy Intellivision products.

Mattel asserts, *inter alia*, that the representations were not false at the time they were made. In support, Mattel submitted the affidavit of Kenneth A. Bloom, Mattel's Vice–President of Financial Planning. According to Mr. Bloom, in December of 1983, Mattel's Board of Directors formed a task force to review its options regarding the continued losses in Intellivision and to make a report with recommendations. The report was presented at the Board's regularly scheduled meeting on February 2, 1984. The report recommended that Mattel sell Intellivision; at that point, and not before, the Board decided to sell Intellivision.

If Mattel had not determined to sell the business until it received the task force report, then the prior representations to the contrary were not false. Therefore, in order for Plaintiff to defeat Mattel's motion on this claim, Plaintiff must point to evidence in the record that creates a genuine issue that the decision to sell Intellivision was not made on February 2, 1984, pursuant to the task force report, but at some point earlier. The only evidence Plaintiff points to in this regard is by reference to Mr. Bloom's deposition[8] and argues that "Bloom knew that abandonment of the business was being considered as early as August of 1983." However, Plaintiff overstates the inference to be drawn from Mr. Bloom's statements. Upon close reading of Bloom's deposition testimony, we find nothing to support an inference that Mattel management had determined to sell Intellivision in August of 1983. At most, the only reasonable inference to be drawn from Mr. Bloom's testimony is that rumors regarding Intellivision being sold were commonplace.

Plaintiff also attempts to show a genuine issue that the reason Mattel did not abandon the Intellivision division earlier than February 1984 was because of the adverse effect such an earlier action might have on Mattel's ability to collect its accounts receivable.[9] However, the fact that the decision to not sell may have been motivated, in whole or in part, by Mattel's desire to collect its accounts receivable, does not negate the fact that the decision was to not

---

7. Mattel Exhibits 65, 68.

8. Bloom Deposition, 144, 172.

9. Bloom deposition, 194–195.

sell. Attempting to use this limited exchange to show a genuine issue that the decision to sell had been reached, is insupportable.

Plaintiff has failed to demonstrate an issue of fact that the decision to sell Intellivision was made prior to the task force report; therefore, he has failed to show a genuine issue for trial that the disputed statements were false when made. *Cf. Du Sesoi v. United Refining Co.*, 540 F.Supp. 1260, 1273 (W.D.Pa.1982). Accordingly, summary judgment on this count is warranted.

### Count IV—Mistake

■■■ Plaintiff next contends that it is entitled to void its purchases of Intellivision products on the basis of mistake. Plaintiff's claim of mistake does not go to any specific ambiguity or error regarding the purchases, such as a mistake on the price or in delivery dates, but to its expectations of Mattel's future course of conduct. Plaintiff argues that it continued as an Intellivision distributor in the mistaken belief that Mattel was committed to staying in the video game business; and that Mattel, having created the mistake through its misrepresentations, was aware of Plaintiff's error but took no steps to correct it. Alternatively, if Mattel itself was mistaken as to its future plans, the purchases are voidable on the basis of mutual mistake.

The Restatement (Second) of Contracts § 293 provides that "a mistake is a belief that is not in accord with existing facts." The erroneous belief must relate to facts "as they exist at the time of the making of the contract." *Id.* at Comment a. Thus, "[a] party's prediction or judgment as to events to occur in the future, even if erroneous, is not a 'mistake' as that word is defined here." *Id.* Consequently, "[n]either disappointed expectations as to future events, nor mistakes of judgments or belief in that regard, state any claim for relief based on mutual mistake." *Baker v. Penn Mutual Life Insurance Co.*, 788 F.2d 650,

662 (10th Cir.1986); *Haas v. Pittsburgh National Bank*, 495 F.Supp. 815, 817 (W.D.Pa.1980).

In this case, Plaintiff's mistaken belief, whether unilateral or mutual, that Mattel would continue to manufacture home video game products is clearly predicated on "a party's prediction or judgment as to events to occur in the future...." *Id.* As such, this type of mistake will not afford the relief Plaintiff seeks. Summary judgment on this count should be granted.

### Count V—Antitrust

#### A. Illegal Tying Arrangement

According to Mr. Leff's deposition testimony [10], in 1981 and 1982, Mattel, through its agent, told him that unless he bought $100,000.00 worth of the "PEP products" [11] he would be removed as an Intellivision distributor. Mr. Leff balked at the demand, but eventually did concede to buying approximately $12,000.00 worth of PEP products. According to Plaintiff, Defendant's coercive conduct constitutes a cause of action for an illegal tying arrangement in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14.

■■■ A "tying arrangement" occurs when a seller refuses to sell one product (the tying product) unless the buyer also purchases another product (the tied product). A tying arrangement is illegal *per se* where the Plaintiff can establish that: 1) the Defendant has sufficient "market power" in the tying product market to appreciably restrain trade in the tied product market; and 2) a not insubstantial volume of commerce in the tied product market is foreclosed. *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 6, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958); *Hudson's Bay Co. Fur Sales, Inc. v. American Legend Cooperative*, 651 F.Supp. 819, 841 (D.N.J.1986).

---

**10.** Leff deposition 153–156.

**11.** "PEP products" are not fully identified, but apparently are electronic toys manufactured by

Mattel and generically described as "portable electronic products."

■ The Supreme Court has determined that in order to prevail on a *per se* theory, Plaintiff must make a threshold showing of actual market power in the tying project. *Jefferson Parish Hospital District No. 2 v. Hyde*, 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). Actual market power exists: 1) when the government has granted the seller a patent or similar monopoly over the product; or 2) when the seller's share of the market is high; or 3) when the seller offers a "unique product" that competitors are not able to offer. *Mozart Co. v. Mercedes–Benz of North America, Inc.*, 833 F.2d 1342, 1345–46 (9th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 179, 102 L.Ed.2d 148 (1988). The only factor implicated by the facts of this case is whether Mattel's share of the market is high.

■ At its peak, Mattel's share of the market in home video games was approximately 30% of the dollar sales of the total market.[12,13] This amount is insufficient to demonstrate that Mattel exerted such market power so as "to force a purchaser to do something that he would not do in a competitive market." *Hyde*, 466 U.S. at 13–14, 104 S.Ct. at 1559, (30% market share deemed insufficient); *Times-Picayune Pub. Co. v. United States*, 345 U.S. 594, 612, 73 S.Ct. 872, 882, 97 L.Ed. 1277 (1953) (40% insufficient).

Additionally, Plaintiff has failed to present competent evidence that as a result of Mattel's conduct "a substantial volume of interstate commerce in the tied product market is foreclosed." *Hudson's Bay*, 651 F.Supp. at 841. At most, Plaintiff has shown that $12,000.00 of PEP products are involved. It is untenable that a jury, acting reasonably, could find that $12,000.00 in a multi-billion dollar industry is anything other than insubstantial. The record, therefore, does not provide a basis for applying *per se* liability.

In order for Plaintiff to recover in the absence of *per se* liability, it must show that the tying arrangement unreasonably restrained competition in the tied (PEP products) market. *Jefferson Parish Hospital*, 466 U.S. at 29, 104 S.Ct. at 1567. Plaintiff's evidence with respect to this element is totally lacking. Plaintiff has failed to make *any* showing that the "tying arrangement" resulted in an unreasonable restraint of competition in PEP products.

In summary, Plaintiff has failed to produce evidence demonstrating a genuine issue of material fact concerning: 1) Plaintiff's market power in video games; 2) the arrangement's effect on more than an insubstantial volume of commerce in PEP products; 3) or the arrangement's impact on competition in PEP products. Accordingly, summary judgment on this claim should be granted.

### B. *Robinson–Patman Price Discrimination Act*

Plaintiff has alleged two separate claims under the Robinson–Patman Price Discrimination Act ("Robinson–Patman"). 15 U.S.C. § 13. Mattel has filed for summary judgment in only one of those claims; therefore, we only address one.

■ The Robinson–Patman Act prohibits discrimination in favor of one purchaser against another purchaser of goods in furnishing of services or facilities connected with sale. The purpose of the Act is to prevent large buyers from using their economic power to gain favorable terms from manufacturers and, thus, gain an unfair advantage over smaller competitors who can not buy in bulk. *Bouldis v. U.S. Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Plaintiff asserts that Mattel granted certain preferential treatment to other Intellivision purchasers in violation of the Act.

---

12. Kyle Affidavit, Exhibits A–D.

13. Plaintiff argued that it once applied to Atari for a distributorship. Atari was the undisputed leader in the home video game market with a sixty percent share. Plaintiff contends that because Atari turned him down, the market should be defined as the home video game market without Atari and, thus, Mattel's share of the market is substantially higher. We found the argument ingenuous, but totally insupportable in law.

The factual predicate for Plaintiff's claim is again found in the deposition testimony of Mr. Kenneth A. Bloom.[14] The pertinent parts of Mr. Bloom's deposition establishes that, after Mattel sold its Intellivision division, three of Mattel's customers balked at repaying their outstanding balances. The three are Toys–R–Us, Best Products, and M.W. Kasch Company. According to Mr. Bloom, he recommended to his superiors that Mattel bring legal action against these three companies to secure full payment of their outstanding balances; however, the superiors decided not to. Although the record is not perfectly clear, viewed generously, it appears that these three were either allowed to return unsold products for credit, or Mattel simply did not pursue collection proceedings. Plaintiff contends that Mattel's failure to afford him the same privilege was discrimination and a violation of section 13(e) of Robinson–Patman.

Three elements are necessary to state a claim for actionable violation of Robinson–Patman. Plaintiff must show that: 1) the alleged discrimination meets the "in commerce requirement," i.e. that "either or any" of the purchases involved are in commerce; 2) that there has been discrimination between different purchasers of products of like grade and quality; and 3) the effect of the discrimination "may be substantially to lessen competition or tend to create a monopoly." *Energex Lighting Industries, Inc. v. North American Philips Lighting Corp.,* 656 F.Supp. 914, 919 (S.D.N.Y.1987).

A seller who permits certain of its customers to return unsold goods for credit, while not extending the same privilege to other customers, may violate the Robinson–Patman Act. *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d at 1328 (citing authorities). However, Robinson–Patman reaches discrimination only between customers who compete at "the same functional level." *Federal Trade Commission v. Fred Meyer, Inc.,* 390 U.S. 341, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968). Therefore, Mattel was only required to treat Plaintiff

equally with other distributors. Since both Toys–R–Us and Best Products are direct-buy retailers,[15] even if Mattel treated them more favorably than it treated Plaintiff, he can not recover under Robinson–Patman because distributors and direct buy retailers are not of "the same functional level." *In accord, Estey & Associates, Inc. v. McCulloch Corp.,* 663 F.Supp. 167 (D.Ore. 1986); *Kirby v. P.R. Mallory & Co.,* 489 F.2d 904, 908 (7th Cir.1973) *cert. denied,* 417 U.S. 911, 94 S.Ct. 2610, 41 L.Ed.2d 215 (1974); *Dart Industries, Inc. v. Plunkett Co. of Oklahoma, Inc.,* 704 F.2d 496 (10th Cir.1983); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d at 1328; *Energex Lighting Industries, Inc.,* 656 F.Supp. 914.

Finally, even though the M.W. Kasch Company is also a distributor, Plaintiff has not presented facts sufficient to support his claim. In order to recover under Robinson–Patman, Plaintiff must show more than a difference in terms. Under Robinson–Patman, the "focus [is] on detrimental effects on competition, rather than a concern with individual competitors ..." *O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340 (3d Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982). Therefore, Plaintiff must demonstrate that the discrimination: 1) caused actual competition injury, shown by market analysis; or 2) was a result of predatory intent, from which competition injury may be inferred. *O. Hommel Co.,* 659 F.2d at 347. Plaintiff's evidence is totally absent in either regard.

Since Plaintiff has failed to produce evidence in support of elements which it will be required to prove at trial, there is no genuine issue of fact for trial and, therefore, the claim must fall.

## IV. *Conclusion*

Summary judgment should be granted in favor of Defendant on Count I—Breach of Contract (except insofar as Plaintiff alleges a claim for defective goods); Count II—Wrongful Interference with Contractual

---

**14.** Bloom deposition 76–84.

**15.** Bloom Deposition 78–79.

Relations; Count III—Fraud, Mistake, and Deceit; Count IV—Mistake; and Count V—Antitrust to the extent that Plaintiff alleges: 1) an unlawful tying arrangement; and 2) discrimination under Robinson–Patman as discussed herein, the other Robinson–Patman claims remain at issue.