In re Charles S. ROONEY d/b/a Fox Chapel Sunoco, Debtor.

MERCURY MARINE ACCEPTANCE CORPORATION, Plaintiff,

v.

Charles S. ROONEY d/b/a Fox Chapel Sunoco, Defendant.

Bankruptcy No. 90–00707.
Adv. No. 90–0258.

United States Bankruptcy Court,
W.D. Pennsylvania.

Nov. 28, 1990.

---

Dale S. Webber, Pittsburgh, Pa., for plaintiff.

Kenneth M. Steinberg, Pittsburgh, Pa., for debtor/defendant.

MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the Court is the Plaintiff's motion for summary judgment in this action challenging dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6). The parties filed stipulations of fact. In addition, Plaintiff filed an affidavit, brief, and documents in support of its motion. The Debtor/Defendant has not responded to the motion for summary judgment. The Court finds that there is no genuine issue as to any material fact and that the Plaintiff, Mercury Marine Acceptance Corporation, is entitled to summary judgment as a matter of law. *M. Leff Radio Parts, Inc. v. Mattel, Inc.*, 706 F.Supp. 387, 392 (W.D.Pa.1988); Bankruptcy Rule 7056. The stipulation of fact, affidavit and documents before the Court establish that the Plaintiff has made a showing sufficient to establish the existence of each element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The facts are as follows: on October 25, 1979, Fox Chapel Marine Sales granted the Debtor a loan in the original principal amount of $80,000.00. To secure Debtor's obligation to repay, Debtor made, executed and delivered a retail installment contract (security agreement) to Fox Chapel Marine Sales, a copy of which has been made part of the record. The security agreement was assigned for value to the Plaintiff, Mercury Marine Acceptance Corporation, on the same date. Without obtaining permission from or notifying Plaintiff of his intention to do so, sometime in August 1985 the Debtor transferred to a disinterested third party the 1980 48' NautaLine houseboat and twin 454 engines which secured the obligation. The transfer, which was in violation of a specific provision prohibiting same contained within the retail installment sales contract, was a default under the contract which entitled Mercury Marine to repossess its collateral.[1]

---

1. A provision of the retail installment sales agreement states: "Subject to the terms and conditions of this agreement, Buyer shall have possession of said property. Buyer agrees he will use said property in a careful and prudent manner ... that he will not sell, dispose of or

mortgage the same or move it from the county wherein he now resides, ... without written consent of the Seller, its successors or assigns...." Another provision entitles the Seller, at its option upon Buyer's default, with or without notice to Buyer, to "enter upon the premises

The purchase money security interest which was evidenced by the security agreement was perfected by appropriate filings as required in the Commonwealth of Pennsylvania. In addition, on March 3, 1989, Debtor executed a judgment note in favor of Plaintiff in the amount of $42,907.22 together with interest thereon at the rate of 12.77 percent per annum. As of March 14, 1990, the date on which Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code, Debtor owed Plaintiff $33,922.00. On June 1, 1990, Plaintiff filed this adversary seeking to have the debt owed it by Debtor deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(6). The issue which must be resolved, therefore, is whether Debtor's transfer of the boat and engine was a willful and malicious injury by the Debtor to the property of another entity such that the debt is nondischargeable.

Debtor does not deny that he transferred the collateral intentionally and voluntarily. Thus, the element of "willful" is met. In the case of *In re Pommerer,* 10 B.R. 935 (Bankr. D.C.Minn.1981), the court noted that the phrase "willful and malicious injury" includes a willful and malicious conversion of property. In discussing what constitutes a "malicious conversion", the court noted that the concept of "malicious" envisions some aggravating feature which shows that the conversion act was more than minimal or technical wrongdoing. *See also Matter of Cullen,* 71 B.R. 274, 282 (W.D.Wisc.1987) (to prove malice, creditor must show that debtor knew that his act would harm another and proceeded in the face of that knowledge. Concealment of the sale raises inference of knowledge.) *Cf. In re Tracton,* 74 B.R. 40 (Bankr.S.D. Fla.1987) (mere proof that some secured furniture was not returned to creditor, a technical conversion, did not amount to willful and malicious conversion). Here Debtor has not rebutted the inference that he knew that his transfer would injure the creditor by removing its collateral. Debtor signed the security agreement and was aware of its terms.

Other courts have encountered voluntary transfers of property subject to security interests. In the case of *In re Auvenshine,* 9 B.R. 772 (Bankr.W.D.Mich.1981), a debtor's sale of property covered by a security interest in order to raise money for the purchase of an automobile was found to be a willful and malicious conversion such that the debt was declared nondischargeable. In *Matter of Wheeler,* 73 B.R. 220 (Bankr.W.D.Mo.1987), debtor sold a boat and trailer in derogation of creditor Mercury Marine Acceptance Corporation's security interest. The court found the transfer to be a conversion which caused a willful and malicious injury. The debt was held to be nondischargeable. *Cf. Tracton, supra,* at 42 (failure to prove unauthorized sale of assets resulted in discharge of debt). In the instant case, the Debtor's actions were more than minimal or technical wrongdoings. The Debtor made an unauthorized transfer of Plaintiff's collateral to an undisclosed third party without notice to the Plaintiff. Because of the transfer, the Plaintiff cannot exercise any of its rights, *inter alia,* to inspect or repossess the property, update the financing statements to show the new owner, or ascertain whether the collateral has remained free and clear of all liens and encumbrances, including tax liens, levies or assessments. The security agreement specifically prohibits the removal of the property from Pennsylvania without written permission of the Plaintiff. Plaintiff cannot even ascertain the whereabouts of its collateral. Clearly, removing the collateral from the reach of the secured party in such a complete fashion as did this Debtor constitutes a willful and malicious injury.

The court finds that there is no material fact in dispute and Plaintiff is entitled to judgment as a matter of law.

An appropriate Order will be entered.

## ORDER

And now, to-wit, this 28th day of November, 1990, for the reasons set forth in the

---

of the Buyer or any place where such property or any part thereof may be found and take

possession of the property with or without legal process...."

**480**

foregoing Memorandum Opinion, it is ORDERED that Plaintiff's motion for summary judgment is GRANTED and judgment is entered in favor of Plaintiff against Defendant.

It is FURTHER ORDERED that the debt of Debtor Charles S. Rooney, d/b/a Fox Chapel Sunoco to Mercury Marine Acceptance Corporation is ORDERED, ADJUDGED AND DECLARED to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and Debtor remains responsible for payment in the amount of $33,922.00 plus interest, costs and attorney's fees pursuant to the terms of the retail installment sales contract.